UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>    v.<br><br>STATE OF RHODE ISLAND,<br>RHODE ISLAND DEPARTMENT OF<br>CORRECTIONS,<br><br>        Defendants. | Civil Action No.:<br> |

## COMPLAINT

1. This action is brought on behalf of the United States to enforce the provisions of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-6 ("Title VII"). As is set forth more fully below, the United States alleges that, since 2000, Defendants, the State of Rhode Island ("Rhode Island") and the Rhode Island Department of Corrections ("RIDOC"), have used and continue to use a written examination and a video examination to screen and select applicants for entry-level correction officer ("CO") positions at RIDOC. Through use of these employment examinations, Defendants have engaged in a pattern or practice of employment discrimination against African Americans and Hispanics in its selection procedure for entry-level CO positions in violation of Title VII.

## JURISDICTION AND VENUE

2. This court has jurisdiction of this action under 42 U.S.C. § 2000e-6(b), 28 U.S.C. §§ 1331, 1343(a)(3), and 1345.

3. Venue is proper in the United States District Court for the District of Rhode Island because a substantial part of the acts and omissions giving rise to this action occurred in Rhode Island. 28 U.S.C. § 1391(b).

4. Defendant Rhode Island is a governmental entity and a person within the meaning of 42 U.S.C. § 2000e(a) and an employer within the meaning of 42 U.S.C. § 2000e(b).

5. Defendant RIDOC is a governmental agency and a person within the meaning of 42 U.S.C. § 2000e(a) created pursuant to the laws of Rhode Island, R.I. Gen. Laws § 42-56-2, and an employer within the meaning of 42 U.S.C. § 2000e(b).

6. The Director of RIDOC has the authority to hire all RIDOC employees, and has broad authority regarding terms and conditions of employment for all RIDOC employees. R.I. Gen. Laws §§ 42-56-5, 42-56-10(7) & (14).

7. Defendants are responsible for establishing the terms, conditions, and other practices which bear upon the selection and employment of COs at RIDOC.

8. Defendants employ COs who are responsible for, among other things, maintaining custodial care and control of inmates housed in correctional facilities in the State.

## FACTS

### A. *Challenged Employment Practices*

9. Since 2000, Defendants have used, and continue to use, a written examination in the screening and selection of applicants for appointment to entry-level CO positions at RIDOC. A written examination developed by Jeanneret & Associates was administered from January 2000 through June 2004 to applicants for entry-level CO positions. A modified version of the written examination, as revised by the Rhode Island Office of Personnel Administration, has been administered since June 2006.

10. Since 2000, Defendants have used, and continue to use, a video examination in the screening and selection of applicants for appointment for entry-level CO positions at RIDOC. A video examination developed by Ergometrics and Applied Personnel Research Inc. has been administered to applicants since 2000 for entry-level CO positions with RIDOC.

11. Since 2000, Defendants have used the written examination and video examination separately on a "pass/fail" basis. As such, Defendants have required applicants for entry-level CO positions at RIDOC to meet the minimum passing standard for each examination in order to remain eligible for hiring consideration.

12. Since 2000, Defendants have used a 70% correct passing standard for the written examination and a 79.5% passing standard for the video examination.

13. Since 2000, Defendants have required, and continue to require, applicants for entry-level CO positions at RIDOC to take both the written examination and video examination on the same day as part of the "examination phase" of the selection procedure. Defendants place only those applicants who pass both the written and video examinations on an eligibility list for further consideration in the hiring process ("combined use" of the written and video examinations).

14. Defendants place applicants for entry-level CO positions at RIDOC on an eligibility list in descending rank order based solely on their video examination score and process applicants on the eligibility list for further hiring consideration based on this rank.

15. Defendants' pass/fail use, since 2000, of the written and video examinations separately, and the combined use of both examinations, has disproportionately eliminated both African-American and Hispanic applicants for entry-level CO positions at RIDOC from further consideration in the CO hiring process.

### B. Pass/Fail Use of the Written Examination

16. For the period between 2000 and 2011, approximately 94% of white applicants who took the written examination for the entry-level CO position at RIDOC passed the examination, while only approximately 74% of African-American applicants passed the examination. The difference between the pass rate of African-American applicants and that of white applicants is statistically significant.

17. For the period between 2000 and 2011, approximately 94% of white applicants who took the written examination for the entry-level CO position at RIDOC passed the examination, while only approximately 74% of Hispanic applicants passed the examination. The difference between the pass rate of Hispanic applicants and that of white applicants is statistically significant.

18. For the period between 2000 and 2005, approximately 88% of white applicants who took the written examination for the entry-level CO position at RIDOC passed the examination, while only approximately 54% of African-American applicants passed the examination. The difference between the pass rate of African-American applicants and that of white applicants is statistically significant.

19. For the period between 2000 and 2005, approximately 88% of white applicants who took the written examination for the entry-level CO position at RIDOC passed the examination, while only approximately 48% of Hispanic applicants passed the examination. The difference between the pass rate of Hispanic applicants and that of white applicants is statistically significant.

20. For the period between 2006 and 2011, approximately 97% of white applicants who took the written examination for the entry-level CO position at RIDOC passed the examination, while only approximately 81% of African-American applicants passed the examination. The

difference between the pass rate of African-American applicants and that of white applicants is statistically significant.

21.     For the period between 2006 and 2011, approximately 97% of white applicants who took the written examination for the entry-level CO position at RIDOC passed the examination, while only approximately 80% of Hispanic applicants passed the examination. The difference between the pass rate of Hispanic applicants and that of white applicants is statistically significant.

    C.    *Pass/Fail Use of the Video Examination*

22.     For the period between 2000 and 2011, approximately 66% of white applicants who took the video examination for the entry-level CO position at RIDOC passed the examination, while only approximately 47% of African-American applicants passed the examination. The difference between the pass rate of African-American applicants and that of white applicants is statistically significant.

23.     For the period between 2000 and 2011, approximately 66% of white applicants who took the video examination for the entry-level CO position at RIDOC passed the examination, while only approximately 37% of Hispanic applicants passed the examination. The difference between the pass rate of Hispanic applicants and that of white applicants is statistically significant.

    D.    *Pass/Fail Combined Use of the Written and Video Examinations*

24.     For the period between 2000 and 2011, approximately 63% of white applicants who took both the written and video examinations for the entry-level CO position at RIDOC passed the examinations, while only approximately 41% of African-American applicants passed both examinations. The difference between the pass rate of African-American applicants and that of white applicants on the combined use of the two examinations is statistically significant.

25.     For the period between 2000 and 2011, approximately 63% of white applicants who took both the written and video examinations for the entry-level CO position at RIDOC passed the examinations, while only approximately 33% of Hispanic applicants passed both examinations. The difference between the pass rate of Hispanic applicants and that of white applicants on the combined use of the two examinations is statistically significant.

26.     For the period between 2000 and 2005, approximately 56% of white applicants who took both the written and video examinations for the entry-level CO position at RIDOC passed the examinations, while only approximately 25% of African-American applicants passed both examinations. The difference between the pass rate of African-American applicants and that of white applicants on the combined use of the two examinations is statistically significant.

27.     For the period between 2000 and 2005, approximately 56% of white applicants who took both the written and video examinations for the entry-level CO position at RIDOC passed the examinations, while only approximately 25% of Hispanic applicants passed both examinations. The difference between the pass rate of Hispanic applicants and that of white applicants on the combined use of the two examinations is statistically significant.

28.     For the period between 2006 and 2011, approximately 65% of white applicants who took both the written and video examinations for the entry-level CO position at RIDOC passed the examinations, while only approximately 45% of African-American applicants passed both examinations. The difference between the pass rate of African-American applicants and that of white applicants on the combined use of the two examinations is statistically significant.

29.     For the period between 2006 and 2011, approximately 65% of white applicants who took both the written and video examinations for the entry-level CO position at RIDOC passed the examinations, while only approximately 34% of Hispanic applicants passed both examinations.

The difference between the pass rate of Hispanic applicants and that of white applicants on the combined use of the two examinations is statistically significant.

### UNITED STATES PATTERN OR PRACTICE CLAIMS PURSUANT TO SECTION 707 OF TITLE VII

30. Plaintiff United States realleges and incorporates herein by reference paragraphs 1-29.

31. Defendants' use of the written examination as a pass/fail screening device with a cutoff score of 70% results in a disparate impact upon African-American and Hispanic applicants for entry-level CO positions at RIDOC, is not job related for the CO position and not consistent with business necessity, and otherwise does not meet the requirements of Section 703(k) of Title VII, 42 U.S.C. § 2000e-2(k).

32. Defendants' use of the video examination as a pass/fail screening device with a cutoff score of 79.5% results in a disparate impact upon African-American and Hispanic applicants for entry-level CO positions at RIDOC, is not job related for the CO position and not consistent with business necessity, and otherwise does not meet the requirements of Section 703(k) of Title VII, 42 U.S.C. § 2000e-2(k).

33. Defendants' combined use of the written examination and video examination as a pass/fail screening device to place applicants on an eligibility list to continue in the entry-level CO selection procedure at RIDOC results in a disparate impact upon African-American and Hispanic applicants, is not job related for the CO position and not consistent with business necessity, and otherwise does not meet the requirements of Section 703(k) of Title VII, 42 U.S.C. § 2000e-2(k).

34. Defendants have pursued and continue to pursue policies and practices that discriminate against African Americans and Hispanics and that deprive or tend to deprive African Americans of employment opportunities because of their race and Hispanics of employment opportunities

because of their national origin, in violation of Section 707 of Title VII, 28 U.S.C. § 2000e-6. Defendants have implemented these policies and practices, among other ways, by:

    a. failing or refusing to appoint African-American and Hispanic applicants to the entry-level CO position at RIDOC on the same basis as white applicants;

    b. using, in the screening and selection of applicants for the entry-level CO position at RIDOC, written and video examinations as pass/fail screening devices, where use of these examinations results in a disparate impact upon African-American and Hispanic applicants, is not job related for the position in question and consistent with business necessity, and does not otherwise meet the requirements of Section 703(k) of Title VII, 42 U.S.C. § 2000e-2(k);

    c. failing or refusing to take appropriate action to correct the present effects of its discriminatory policies and practices; and

    d. failing or refusing to "make whole" those African-American and Hispanic applicants for appointment to the entry-level CO position at RIDOC who have been harmed by Defendants' unlawful use of the written and video examinations.

35. In accordance with Section 707 of Title VII, 42 U.S.C. § 2000e-6, the United States, through the Department of Justice, has conducted an investigation of the policies and practices of Defendants with respect to its screening and selection of applicants for the entry-level CO position at RIDOC and the effect of such policies and practices on African-American and Hispanic applicants, has notified Defendants of that investigation and of the United States' determination that the policies and practices described in paragraphs 9-33 are unlawful.

36. The policies and practices of Defendants described in paragraphs 9-33 constitute a pattern or practice of resistance to the full enjoyment by African Americans and Hispanics of their right

to equal employment opportunities without discrimination based upon race and/or national origin, in violation of Section 707 of Title VII, 42 U.S.C. § 2000e-6. This pattern or practice is of such a nature as to deny the full exercise of the rights secured by Title VII. Unless restrained by order of this Court, Defendants will continue to pursue policies and practices that are the same as or similar to those alleged in this Complaint.

## PRAYER FOR RELIEF

WHEREFORE, the United States prays for an order enjoining Defendants, and their officers, agents, employees, successors, and all persons in active concert or participation with them from engaging in employment policies and practices which discriminate against African Americans on the basis of race and Hispanics on the basis of national origin in violation of Title VII, and specifically from:

a. failing or refusing to appoint African-American and Hispanic applicants to entry-level CO positions at RIDOC on the same basis as white applicants;

b. using a written examination and video examination, separately or in combination, as tools in the screening and selection of applicants for entry-level CO positions at RIDOC in a manner that results in a disparate impact upon African-American and Hispanic applicants, that is not job-related for the position in question and consistent with business necessity, and does not otherwise meet the requirements of Section 703(k) of Title VII, 42 U.S.C. § 2000e-2(k);

c. failing or refusing to take appropriate action to correct the present effects of the Defendants' discriminatory policies and practices, including but not limited to the following:

        (i)    adopting entry-level CO selection procedures that comply with Title VII; and

        (ii)    taking such other reasonable actions that are necessary to correct the present effects of past discrimination;

d.    failing or refusing to provide "make whole" relief to African-American and Hispanic applicants for the entry-level CO position at RIDOC who have been harmed or will be harmed as a result of the discriminatory policies and practices alleged in this Complaint.

Plaintiff United States prays for such additional relief as justice may require, together with its costs and disbursements in this action.

Dates: February 10, 2014

Respectfully submitted,

PETER F. NERONHA
United States Attorney
District of Rhode Island

JOCELYN SAMUELS
Acting Assistant Attorney General
Civil Rights Division

By: /s/

DELORA L. KENNEBREW
(GA Bar No. 414320)
Chief
LOUIS LOPEZ
(DC Bar No. 461662)
Deputy Chief
CLARE GELLER
(NY Reg. No. 4087037)
ELIZABETH B. BANASZAK
(IL Bar No. 6299035)
Trial Attorneys
Employment Litigation Section
Civil Rights Division

United States Department of Justice
950 Pennsylvania Avenue, NW, PHB
Washington, DC 20530
Telephone: (202) 353-1817
Fax: (202) 514-1105
clare.geller@usdoj.gov

*Counsel for Plaintiff United States of America*