UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>Plaintiff,<br><br>v.<br><br>**STATE OF RHODE ISLAND,**<br>**RHODE ISLAND DEPARTMENT OF**<br>**CORRECTIONS,**<br><br>Defendants. | Civil Action No.: 1:14-cv-78(S) |

**Plaintiff United States' Opposition to Defendants' Motion to Dismiss**

Plaintiff United States of America ("United States") submits this Opposition to Defendants State of Rhode Island and Rhode Island Department of Correction's (referred to as "Defendants," "Rhode Island," or "RIDOC") Motion to Dismiss (Dkt. No. 9). For the reasons set forth below, the Motion to Dismiss should be denied.

**I.      Summary of Argument and Statement of Issues**

In its Complaint, the United States asserted disparate impact claims under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"), against Rhode Island, challenging as discriminatory three employment practices which are part of Rhode Island's *current* entry-level selection procedure for correction officers ("COs") at RIDOC, and have been part of the CO selection procedure since at least 2000. In its Memorandum of Law in Support of the Motion to Dismiss ("Motion to Dismiss") (Dkt. No. 9-1), Rhode Island asserts that the United States' claims should be dismissed because: (1) the United States failed to comply with administrative prerequisites it believes applicable before bringing this lawsuit; (2)

the United States' claims are untimely; and (3) the individual relief sought by the United States is not available in an action under 42 U.S.C. § 2000e -6(a) of Title VII ("Section 707(a)"). Rhode Island's arguments contradict the plain language of Title VII, its relevant legislative history, and the great weight of authority regarding the Attorney General's independent power to initiate litigation in federal district court pursuant to Section 707(a).

## II. Legal and Procedural Background

### A. Attorney General's Authority Under Title VII

Title VII gives the Attorney General of the United States two bases of authority for bringing lawsuits against local or state government employers. The Attorney General may bring suit under Section 706 of Title VII based upon a charge of discrimination that was filed with the U.S. Equal Employment Opportunity Commission ("EEOC") and referred to the Department of Justice by the EEOC. *See* 42 U.S.C. § 2000e-5(f)(1) ("Section 706"). In a case based on Section 706, the Attorney General may bring suit only if the EEOC investigated the charge, found reasonable cause to believe that a violation of Title VII occurred, and was unsuccessful in its efforts to obtain voluntary compliance through conciliation. *Id.* By contrast, Section 707(a) – the provision at issue in this case – does not depend on a charge having been filed with the EEOC. Section 707 confers independent statutory authority on the Attorney General to *initiate* a pattern or practice case without a charge from the EEOC. *See* 42 U.S.C. 2000e-6(a).

The history of Section 707 shows that the Attorney General's authority does not depend on compliance with EEOC procedures. The initial (1964) version of Section 707 consisted only of subsections (a) and (b), which authorized the Attorney General to file pattern or practice suits and the courts to hear such claims. *See* 42 U.S.C.A. 2000e-6. Only with the 1972 amendments

2

to Title VII (which added subsections (c) through (e) to Section 707) did the EEOC receive authority to initiate pattern and practice litigation in federal district court. *Id*.

In 1978, to clarify the impact of the 1972 Amendments on the Attorney General's authority to bring pattern or practice cases against local and state governments, Congress passed a Reorganization Plan, which was implemented pursuant to an Executive Order issued by President Carter. *See* 42 U.S.C.A. 2000e-6 citing Reorg. Plan No. 1 of 1978, § 5, 43 F.R. 19807, 92 Stat. 3781. Section 5 of the Reorganization Plan clarified that the Attorney General has independent authority to bring pattern or practice cases against local and state governments, and stated that all of the functions related to such cases, *e.g.*, investigations and notice, should be exercised by the Attorney General "in accordance with procedures consistent with said Title VII." *Id*. The President's Executive Order implementing Section 5 more specifically stated that the Attorney General is to perform these functions "*in accordance with Department of Justice procedures heretofore followed under section 707*." *Id*. citing Executive Order No. 12068, June 30, 1978, 43 F.R. 28971 (emphasis added). Thus, Section 707 offers a litigation route for the United States that is entirely separate from the route offered by Section 706.[1]

B.   United States' Action Against Rhode Island

The United States filed the Complaint in this action on February 10, 2014, pursuant to the Attorney General's independent authority under Section 707(a). *See* Dkt. No. 1 at ¶ 1. The United States' complaint alleges that Rhode Island used a written examination and a video examination that did not comply with Title VII to select individuals for entry-level CO positions from 2000 through the present. *Id*. ¶¶ 31-33. Specifically, the complaint alleges that Rhode Island's use of the written and video examinations, separately and in combination, have

---

[1] To be sure, the United States can take both routes, but if the United States brings suit under Section 706, these claims do depend on a charge being filed.

disproportionately excluded African-American and Hispanic candidates from employment with Rhode Island in CO positions and that these examinations are not job related and consistent with business necessity. *Id.*

Prior to filing its complaint, the United States engaged in an investigation of Rhode Island's hiring procedures for COs. The United States first informed Rhode Island of the investigation on September 1, 2009. *See* Exhibit A to Motion to Dismiss (Dkt. No. 9-2). In this Notice of Investigation letter, the United States informed Rhode Island that it would be investigating whether Rhode Island had violated the disparate impact provisions of Title VII and stated that, should a violation be found, the Attorney General had the authority to enforce these provisions of Title VII by bringing a lawsuit pursuant to Section 707(a). *Id.* The letter further specified that the United States' investigation would examine the impact of Rhode Island's employment practices on African Americans, Hispanics, and women with regard to CO positions. *Id.* A second letter on October 2, 2009, requested the production of information on the components of Rhode Island's entry-level hiring procedures for COs from 2000 to the present. *See* Exhibit C to Motion to Dismiss (Dkt. No. 9-4). The parties also held an in-person meeting on October 23, 2009, where the scope of the investigation was discussed and information was exchanged. *See Id.*; Correspondence Between the Parties, Exhibit D to Motion to Dismiss (Dkt. No. 9-5). As the investigation progressed, its focus narrowed to the written and video examination components. *See, e.g.*, Correspondence between the Parties, Exhibit K to Motion to Dismiss (Dkt. No. 9-12), pp. 4-11.

At the conclusion of the investigation, the United States held a telephone conference with Rhode Island on November 25, 2013, to inform it that the United States concluded that Rhode Island's entry-level hiring process violated Title VII. *See* Correspondence Between the Parties,

4

Exhibit L to Motion to Dismiss (Dkt. No. 9-13).  The following day, the United States sent Rhode Island a formal Notice of Suit letter detailing its determination that Rhode Island violated Title VII and the bases for that determination.  *See* Exhibit M to Motion to Dismiss (Dkt. No. 9-14).  The letter stated "[w]e have concluded that Rhode Island's use of the written examination and video examination since 2000 has caused an adverse impact on African-American and Hispanic applicants." *Id*. at 4.  The letter also set forth the general settlement terms that the United States sought in order to resolve the matter without contested litigation and invited Rhode Island to engage in settlement negotiations.  *Id*. at 5.  Two and a half months later, after engaging in unsuccessful settlement negotiations, the United States filed this case.

## III.     Legal Standard

Rhode Island filed its Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), which allows for the dismissal of an action which fails to state a claim upon which relief can be granted.[2]  *See* Dkt. No. 9-1, p. 3.  In order to survive a 12(b)(6) motion to dismiss, a plaintiff "must give the defendant fair notice of what the…claim is and the grounds upon which it rests, and allege a plausible entitlement to relief." *Decotiis v. Whittemore,* 635 F.3d 22, 29 (1st Cir. 2011) *quoting Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 559 (2007) (internal quotations omitted).  In *Ashcroft v. Iqbal*, the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. 662, 678 (2009).

---

[2]  The United States agrees that Rhode Island's attachment of documents to its Motion to Dismiss did not convert that filing into a motion for summary judgment.  If the Court holds otherwise, the United States respectfully requests the opportunity to supplement its response with additional argument and evidence in opposition to a motion for summary judgment.  *See* Fed. R. Civ. P. 12(d).

5

In analyzing whether a complaint sufficiently states a claim, a court should construe the complaint in the most favorable light to the plaintiff, accept all well-pled factual allegations as true, and then determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *See Iqbal*, 556 U.S. at 678 (citation omitted); *Kelly v. U.S. Dept. of Homeland Security ex rel. Johnson*, 2014 WL 1046876, *2 (D.R.I. March 19, 2014) *citing Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir. 1996). In deciding a motion to dismiss, the "issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *rev'd on other grounds Harlow v. Fitzgerald*, 457 U.S. 800 (1982).

## IV. Argument

### A. The United States Satisfied All of the Prerequisites to Bringing an Action Pursuant to Section 707(a)

1. *The only prerequisite to the United States filing suit under Section 707(a) is a determination by the Attorney General that there is reasonable cause to believe that a pattern or practice violation of Title VII has occurred*

Defendants argue that the United States did not satisfy administrative prerequisites before filing suit under Section 707(a). *See* Dkt. No. 9-1, p. 2. In particular, Defendants argue that the United States failed to comply with the notice and conciliation requirements applicable to actions based on Section 706 of Title VII. But those requirements do not apply to Section 707-based lawsuits. The only statutory prerequisite for bringing suit under Section 707(a) is "reasonable cause." Specifically, Section 707(a) provides:

> Whenever the Attorney General has reasonable cause to believe that any person or group of persons is engaged in a pattern or practice of resistance to the full enjoyment of any of the rights secured by this subchapter, and that the pattern or practice is of such a nature and is intended to deny the full exercise of the rights herein described, the Attorney General may bring a civil action in the appropriate district court of the United States by filing with it a complaint (1) signed by him (or in his absence the Acting Attorney General), (2) setting forth facts pertaining

>to such pattern or practice, and (3) requesting such relief, including an application for a permanent or temporary injunction, restraining order or other order against the person or persons responsible for such pattern or practice, as he deems necessary to insure the full enjoyment of the rights herein described.

42 U.S.C. 2000e-6(a).

As courts consistently have held for over thirty years, "the plain language of Section 707 manifestly indicates that the only prerequisite to the United States filing suit under Section 707 is that the Attorney General have reasonable cause to believe there is a pattern or practice of discrimination." *Lanning v. Southeastern Pennsylvania Transportation Authority*, 176 F.R.D. 132, 140 (E.D. Pa. 1997). *See also Masonry Contractors Ass. of Memphis v. U.S*, 497 F.2d 871, 876 (6th Cir. 1974); *U.S. v. City of Yonkers*, 592 F. Supp. 570, 584 (S.D.N.Y. 1984); *U.S. v. McHenry County*, 1994 WL 447419, *4 (N.D. Ill. Aug. 17, 1994); *U.S. v. State of New Jersey*, 473 F. Supp. 1199, 1205 (D.N.J. 1979). Once the Attorney General has made that determination, the court turns to the merits of the Title VII claim. *See U.S. v. Int. Ass'n of Bridge, Structural, and Ornamental Iron Workers*, 438 F.2d 679, 681 (7th Cir. 1971); *City of Yonkers*, 592 F. Supp. at 584. Put simply, courts do not review the Department of Justice's pre-litigation conduct such as its investigation, communications with the defendants, pre-litigation notice, or settlement attempts. *Id.* In contrast, this type of inappropriate review is exactly what Defendants are asking this Court to undertake.

In this case, the United States informed Rhode Island that the Attorney General had made a reasonable cause determination in its November 26, 2013 Notice of Suit letter, and pleaded the determination in Paragraph 35 of its Complaint. *See* Dkt. No. 9-14; Dkt. No. 1. Therefore, the United States has fulfilled the sole statutory prerequisite to bringing a Section 707(a) action in federal court.

7

>   2.   *The administrative prerequisites for a Section 706 case do not apply to Attorney General actions under Section 707(a)*

Despite the plain statutory text and the overwhelming weight of authority, Rhode Island argues that the United States' claims in this case are administratively barred because the United States must follow the "procedural safeguards" of Section 706 claims when it brings a pattern or practice action pursuant to Section 707(a). *See* Dkt. No. 9-1, pp. 10-11. Not so. Contrary to Rhode Island's arguments, *see id.* at pp. 12-15, the language and legislative history of Section 707 both establish that the procedural requirements of Section 706 do not apply to pattern or practice cases brought by the Attorney General under Section 707(a).

As discussed above, under the original text of Title VII, the Attorney General had sole authority to bring pattern or practice cases. *See U.S. v. Fresno Unified Sch. Dist.*, 592 F.2d 1088, 1090-91 (9th Cir. 1979); *City of Yonkers*, 592 F. Supp. at 573. That text contained no language requiring the Attorney General to comply with the procedural strictures of Section 706 and contained no statute of limitations. *See* 42 U.S.C. 2000e-6(a) and (b). In 1978, Congress passed the Reorganization Plan and the President issued an Executive Order which clarified that the procedural requirements for a Section 707(a) pattern or practice cases brought by the Attorney General remained unchanged by the 1972 amendments to the Act. *See City of Yonkers*, 592 F. Supp. at 574, 583; *State of New Jersey*, 473 F. Supp. at 1204-05.

The President's Executive Order could not have been clearer: the Attorney General was directed to perform his enforcement responsibilities "in accordance with *Department of Justice* procedures *heretofore followed under section 707.*" *Id.* (emphasis added). Those procedures had never required proceeding through the EEOC charge and conciliation process. Thus, Congress and the President, through the Executive Order, intended that the Attorney General's authority to

8

initiate independent pattern and practice cases under Section 707(a) remain unchanged and not subject to any procedural constraints beyond those in existence when Section 707 was enacted.

Defendants' arguments to the contrary have been rejected by every court to which they have been presented.  Instead, courts have repeatedly upheld the "well established" principle that the administrative prerequisites that the EEOC is required to take when investigating individual charges of discrimination under Section 706 do not apply to pattern and practice actions initiated by the Attorney General under Section 707(a).  *Lanning*, 176 F.R.D. at 140.  *See also Masonry Contractors*, 497 F.2d at 875-76; *McHenry County*, 1994 WL 447419, *4; *City of Yonkers*, 592 F. Supp. at 583; *State of New Jersey*, 473 F. Supp. at 1205.

Rhode Island's reliance on *Fresno United School District* is misplaced.  There, the Ninth Circuit acknowledged that the question of whether the procedural requirements of Section 706 apply to Attorney General actions pursuant to Section 707(a) was not properly before it.  *See Fresno Unified Sch. Dist.*, 592 F.2d at 1095-96.  Therefore, the only analysis that supports Rhode Island's argument is merely dicta.  Indeed, subsequent courts have rejected the *Fresno* dicta because it "contravenes the professed intention of Congress" and omits a key piece of legislative history from its analysis.  *City of Yonkers*, 592 F. Supp. at 583.  *See also State of New Jersey*, 473 F. Supp. at 1205 (declining to follow *Fresno*).

The error in *Fresno* is that it wrenches language from the 1978 Reorganization plan out of context.  To be sure, that Plan provided that the Attorney General's use of Section 707(a) be exercised "in accordance with the procedures consistent with said Title VII."  *See Fresno Unified Sch. Dist.*, 592 F.2d at 1095.  However, as the subsequent courts explain, *Fresno* ignores the significance of the Executive Order enacting the Reorganization Plan, which directs the Attorney General to exercise its authority "in accordance with Department of Justice procedures

9

heretofore followed under 707." *See City of Yonkers*, 592 F. Supp. at 583; *State of New Jersey*, 473 F. Supp. at 1205 fn. 13. As courts have consistently found, this statement in the Executive Order demonstrates that the intent of the 1978 Reorganization Plan was to clarify that the Attorney General's power to bring 707(a) suits was to be exercised in the same manner as before the 1972 amendments to Title VII. *See City of Yonkers*, 592 F. Supp. at 583; *State of New Jersey*, 473 F. Supp. at 1204. That is that the Attorney General could continue to initiate Section 707(a) pattern or practice suits following the preexisting Department of Justice procedures, which had never required complying with Section 706. *Id.*[3] Therefore, Rhode Island has not demonstrated that the United States' complaint fails to state a claim upon which relief can be granted for failure to comply with the administrative prerequisites of Section 706, and its Motion to Dismiss should be denied.

> 3. *In any event, the United States provided adequate notice and an opportunity to resolve this case before filing suit*

Rhode Island alleges that it was not given appropriate notice or a meaningful opportunity to conciliate this matter prior to the filing of the complaint. *See* Dkt. No. 9-1, p. 10. Rhode Island's arguments are belied by the documents attached to its Motion to Dismiss, which demonstrate that the United States did provide adequate notice and an opportunity to resolve this

---

[3] The additional cases cited in footnote 12 of the Motion to Dismiss, in support of its argument that the prerequisites of Section 706 should be applied to Attorney General actions under Section 707(a), are all directed to a different question entirely: whether the prerequisites of Section 706 should be required for actions that are brought under Section 707(e). *See* Dkt. No. 9-1, p. 14 fn. 12. Section 707(e) is titled "Investigation and action by Commission pursuant to filing of charge of discrimination; procedure." *See* 42 U.S.C.2000e-6(e). This section addresses the authority of the EEOC to bring pattern or practice discrimination actions against private sector employers based on a charge filed with the EEOC. *Id.* By its plain language, it is inapplicable to actions such as this one – cases brought by the Attorney General on his own initiative and without a charge, against state and local governments, under Section 707(a). *Id.*

10

case before filing suit.  Therefore, even though the United States was not statutorily required to take these actions, the United States' conduct during its investigation and settlement efforts demonstrate that there is no inherent unfairness to Rhode Island in the United States' pursuit of its claims.

First, as the correspondence between the parties attached to the Motion to Dismiss demonstrates, the United States sent Rhode Island a Notice of Investigation letter on September 1, 2009.  *See* Dkt. No. 9-2.  While conceding, as it must, that it received the Notice of Investigation letter, Rhode Island apparently contends that this notice was insufficient because it did not contain the "time, date, and circumstances" of the alleged violation.[4]  *See* Dkt. No. 9-1, p. 15.  The State is mistaken.  The correspondence attached to the Motion to Dismiss reflects that it received quite detailed notice regarding the employment practices over which the United States eventually brought suit.  *See* Exhibits to Motion to Dismiss (Dkt. Nos. 9-2 to 9-14).  The initial Notice of Investigation informed Rhode Island that the Department of Justice intended to investigate the effect of its CO selection procedures on African Americans and Hispanics.  A second letter one month later specified that the United States was seeking information on entry-level hiring procedures for COs since 2000.  The parties met in person during the second month of the investigation during which more detail was provided.  And subsequent communications focused even more narrowly on the written and video examinations.  *See e.g.* Dkt. Nos. 9-2, 9-4, 9-5, and 9-12.  These communications illustrate how the allegations brought in the United States'

---

[4]   Interestingly, *Fresno Unified School District*, the only case cited by Rhode Island in support of the argument that the Section 706 notice requirements apply to Section 707(a) cases, discusses how the notice requirements of Section 706 are a poor fit for Section 707(a) actions because there is no single date on which a pattern or practice of discrimination occurs, there is no requirement that a charge be filed with the EEOC, and, without a charge, there is no trigger for the various administrative timelines regarding notice to begin to run.  592 F.2d at 1096.

complaint are a logical result of the Department of Justice's investigation, which narrowed progressively in focus based on information obtained from Rhode Island. Not surprisingly, Rhode Island has not set forth any specific argument why this notice was inadequate.[5] Instead, it disingenuously asserts that the first notice it received of the United States' claims was in November 2013, a contention clearly contradicted by the record.

      Second, in terms of an opportunity to resolve the case, on November 26, 2013, at the conclusion of the investigation, the United States sent Rhode Island a Notice of Suit letter. *See* Dkt. No. 9-14. This letter informed Rhode Island that the United States had determined that a violation of Title VII had occurred, set forth the general settlement terms the United States was seeking to resolve the matter without contested litigation, and invited Rhode Island to engage in settlement negotiations prior to the filing of a complaint. *Id.* Rhode Island's Motion to Dismiss fails to describe or even acknowledge the subsequent two-and-half months of settlement negotiations prior to the filing of the United States' complaint, nor does Rhode Island explain why those negotiations were not an attempt at "meaningful conciliation." Therefore, while the arguments asserted by Rhode Island are irrelevant to whether the United States has stated a claim upon which relief should be granted, its arguments that the United States did not provide notice and an opportunity to conciliate in this case are wholly contradicted by the record.

---

[5]     To the extent that Rhode Island is arguing that the Notice of Investigation letter was not timely because it was issued in 2009 and the investigation and subsequent litigation challenges conduct dating back to 2000, this argument is without merit. See Section IV.B below regarding the statute of limitations for Section 707(a) actions.

12

    B.    <u>The United States is Not Bound By Any Statue of Limitations When Bringing an Action Pursuant to Section 707(a)</u>

        *1.*    *There is no federal or state statute of limitations applicable to an Attorney General action brought pursuant to Section 707(a)*

Defendants seem to argue that the United States' disparate impact claims are untimely because they challenge conduct dating back to 2000. *See* Dkt. No. 9-1, pp. 18-19. However, the United States' complaint alleges that Rhode Island has used the challenged practices, the written examination and video examination, *continuously from 2000 through the present*. *See* Dkt. No. 1, ¶¶ 9-15. As such, the United States is challenging an *ongoing* practice and seeking to enjoin and remedy a *current* violation of Title VII. As these facts demonstrate, Defendants have misconstrued the record to inaccurately suggest that United States is exercising "unfettered authority" to revive otherwise time-barred claims and seek relief "for an unlimited period of time." *See* Dkt. No. 9-1, p. 18.

Defendants' argument fares no better under the statutory language or case law. In particular, Section 707(a) contains no statute of limitations by which the Attorney General must institute a timely action, and certainly does not cut off the Attorney General's ability to bring suit over an ongoing pattern or practice that violates Title VII, such as in this case. *See* 42 U.S.C. 2000e-6(a). Besides, it is well-established that a statute of limitations not contained in Section 707(a) should not be applied to such actions because Section 707(a) actions seek to vindicate the public interest and, as such, the United States is suing to enforce rights belonging to the sovereign. *See U.S. v. Summerlin*, 310 U.S. 414, 416 (1940). Court decisions issued close in time to the 1972 Amendments and Reorganization Plan held that there is "no state or federal statute of limitations applicable to a Section 707(a) action brought by the Attorney General." *Officers for Justice v. Civil Service Commission of the City and County of San Francisco* 1978

13

WL 156, *6 (N.D. Cal. Sept. 22, 1978). *See also EEOC v. Occidental Life Ins. Co. of California*, 535 F.2d 533, 537 (9th Cir. 1976) *aff'd* 431 U.S. 355 (1977). More recent cases have reiterated that "[t]he authority of the United States to bring a pattern or practice suit against a public employer under Section 707(a)…is not restricted by or subject to any statute of limitations." *McHenry County,* 1994 WL 447419, *3. *See also Lanning*, 176 F.R.D. at 144; *City of Yonkers*, 592 F. Supp. at 589. As such, there is no valid timeliness challenge to the instant action, where the United States is challenging Rhode Island's ongoing conduct dating back to the year 2000.

        2.    *The fact that the Attorney General seeks individual relief in a Section 707(a) action does not render it subject to any state statute of limitations*

Not surprisingly, given the weight of applicable authority, Rhode Island seems to concede that no statute of limitations can be applied to the United States when it is seeking to enforce its sovereign rights, but argues that the United States is acting outside its sovereign capacity when it seeks "individual relief" and, therefore, becomes subject to some unspecified state statute of limitations.[6] *See* Dkt. No. 9-1, p. 17 citing *U.S. v. Georgia Power Co.*, 474 F.2d 906, 923 (5th Cir. 1973). Specifically, Rhode Island argues that seeking individual relief essentially converts the United States' lawsuit to a "private action" subject to whatever limitations might bind any private plaintiff. *Id*.

Rhode Island's reliance on *Georgia Power* is undercut by the Supreme Court's subsequent statement in *General Telephone Co. of the Northwest, Inc. v. EEOC*, 446 US 318

---

[6] The United States notes that the arguments raised by Rhode Island about whether individual relief is barred because (1) Section 706 procedural requirements were not satisfied, see Section IV.A above, or (2) an applicable statute of limitations was not met are directed at the appropriate scope of the relief that may ultimately be granted in this action and not to the sufficiency of the United States' claims. Even favorable rulings for Defendants on these issues would not necessitate the dismissal of any of the United States' claims.

14

(1980) that the federal government acts "to vindicate the public interest in preventing employment discrimination" and "is not merely a proxy for the victims of discrimination" when bringing Title VII actions, even where it seeks hiring, retroactive seniority, and back pay for specific individuals. *Id.* at 325-27. *See also EEOC v. Waffle House, Inc.*, 534 US 279, 287-88 (2002). Thus, courts consistently have held that the federal government is acting to enforce the public interest when bringing a Title VII pattern or practice action, even if seeking individual as well as injunctive relief, and may avail itself of the sovereign immunity to state statutes of limitations.[7] *See EEOC v. General Telephone Co. of the Northwest, Inc.*, 599 F.2d 322, 330 (9th Cir. 1979); *Occidental Life Insurance*, 535 F.2d 533, 537-40; *Lanning*, 176 F.R.D. at 143-44; *City of Yonkers*, 592 F. Supp. at 586-87; *Officers for Justice*, 1978 WL 156, *6.

      C.    <u>Individual Relief is Available in an Action Brought by the United States Pursuant to Section 707(a)</u>

The power of the United States to seek individual relief such as back pay, priority hiring, and retroactive seniority in this action flows from Section 707(a) itself. Section 707(a) provides that the Attorney General may "request[] such relief…as he deems necessary to insure the full enjoyment of the rights herein described." 42 U.S.C. 2000e-6(a). Courts have thus consistently held that individual relief, such as back pay, is most properly viewed as "an integral part of make whole relief" and a necessary component for victims' "restoration to prior or lawful status." *See Georgia Power*, 474 F.2d at 921. Section 707(a)'s language has repeatedly been held to encompass individual relief as well as injunctive relief. *See, e.g., Int'l. Brotherhood of Teamsters v. U.S.,* 431 US 324, 360-62 (1977); *Masonry Contractors*, 497 F.2d at 876; *Lowery v. Circuit City Stores, Inc.*, 158 F.3d 742, 759-60 (4th Cir. 1998) *vacated on other grounds,* 527

---

[7]     Although no state statute of limitations should apply, it is notable that Rhode Island fails to even identify what "analogous state statute of limitations" it is seeking to have the Court apply. *See* Dkt. No. 9-1, p. 19.

15

U.S. 1031 (1999); *Georgia Power*, 474 F.2d at 920-21; *Lanning*, 176 F.R.D. at 143; *City of Yonkers*, 592 F. Supp. at 588.  In fact, the United States has routinely obtained individual relief in Title VII Section 707(a) cases pursuant to litigated judgments or court-ordered Consent Decrees. Examples from recent years include *U.S. v. Commonwealth of Massachusetts and Massachusetts Dept. of Corrections* (D. Mass., Civil Action No. 1:09-cv-11623, Dkt. No. 147), *U.S. v. City of New York* (E.D.N.Y., Civil Action No. 07-cv- 2067, Dkt. No. 294), *U.S. v. State of New Jersey and New Jersey Civil Service Comm'n* (D.N.J., Civil Action No. 2:10-cv-00091, Dkt. No. 49), and *U.S. v. City of Corpus Christi, Texas* (S.D. Tex., Civil Action No. 2:12-cv-00217, Dkt. No. 57).  Each of these cases was brought pursuant to Section 707(a) and each included an award of back pay, priority hiring, and retroactive seniority to a class of individual claimants. Therefore, Rhode Island's statement that the "only provisions" in Title VII for individual relief are contained in Section 706 and, consequently, that the United States must comply with the requirements of Section 706 when seeking such relief is incorrect.  *See* Dkt. No. 9-1, pp. 17-18.

Similarly, Rhode Island's related argument that seeking individual relief has subjected the United States to Section 706's two-year statute of limitations on back pay is also incorrect.[8]  *See* Dkt. No. 9-1, pp. 17-18.  The primary case cited by Rhode Island on this issue, *Georgia Power*, itself holds that the Attorney General may seek back pay under Section 707(a) and that the statute of limitations on back pay in Section 706 is "irrelevant" to a case brought pursuant to Section 707(a).  *See* 474 F.2d at 920, 922 fn. 21.  Because the United States is seeking individual relief pursuant to Section 707(a), Rhode Island's argument that the United States must comply with the prerequisites or time limitations of Section 706 is without merit.

---

[8]   As discussed in Footnote 6, this argument also is directed at the appropriate scope of the relief that may ultimately be granted in this action and not to the sufficiency of the United States' claims.  Even favorable rulings for Defendants on this issue would not necessitate the dismissal of the United States' claims.

16

## V. Conclusion

For the reasons set forth above, Rhode Island has not demonstrated that the United States' complaint fails to state a claim upon which relief can be granted.  Therefore, the United States requests that the Court deny Defendants' Motion to Dismiss.

Dated:  May 21, 2014


Respectfully submitted,

| | |
|---|---|
| PETER F. NERONHA<br>United States Attorney<br>District of Rhode Island | JOCELYN SAMUELS<br>Acting Assistant Attorney General<br>Civil Rights Division<br>DELORA L. KENNEBREW<br>Chief<br>Employment Litigation Section<br><br>By:<br> */s Clare Geller*<br>MEREDITH L. BURRELL<br>(MD Bar, No Bar Number Issued)<br>Deputy Chief<br>CLARE GELLER<br>(NY Reg. No. 4087037)<br>ELIZABETH B. BANASZAK<br>(IL Bar No. 6299035)<br>Trial Attorneys<br>Employment Litigation Section<br>Civil Rights Division<br>United States Department of Justice<br>950 Pennsylvania Avenue, NW, PHB<br>Washington, DC  20530<br>Telephone:  (202) 353-1817<br>Fax:  (202) 514-1105<br>clare.geller@usdoj.gov<br><br>*Counsel for Plaintiff United States of America* |

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 21, 2014, a true and correct copy of "Plaintiff United States' Opposition to Defendants' Motion to Dismiss" was filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

    Neil F.X. Kelly (nkelly@riag.ri.gov)
    Rebecca Tedford Partington (rpartington@riag.ri.gov)
    Ariel Yaffee (ayaffee@riag.ri.gov)
    Edward Mullaney (emullaney@riag.ri.gov)
    Kathleen Kelly (kathleen.kelly@doc.ri.gov)

                                      */s Clare Geller*
                                      Clare Geller