**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

**UNITED STATES OF AMERICA,**

Plaintiff,

v.

**STATE OF RHODE ISLAND,**
**RHODE ISLAND DEPARTMENT OF CORRECTIONS,**

Defendants.

Civil Action No.: 1:14-cv-78S

**PLAINTIFF UNITED STATES' OPPOSITION TO DEFENDANTS' MOTION TO CERTIFY FOR INTERLOCUTORY APPEAL THE DISTRICT COURT'S MEMORANDUM AND ORDER DENYING DEFENDANTS' MOTION TO DISMISS**

Plaintiff United States of America ("United States") submits this Opposition to the Motion to Certify for Interlocutory Appeal the District Court's Memorandum and Order Denying Defendants' Motion to Dismiss filed by Defendants State of Rhode Island and Rhode Island Department of Corrections (referred to as "Defendants" or "Rhode Island") (Dkt. No. 29). As this Court and Defendants have recognized, interlocutory certification under 28 U.S.C. § 1292(b) is exceedingly rare and the moving party must satisfy stringent standards to justify granting the motion. Even when these standards are met, the First Circuit discourages interlocutory certification of a motion to dismiss. For the reasons set forth below, Defendants cannot meet their heavy burden in this case; thus, Defendants' Motion to Certify for Interlocutory Appeal should be denied.

## I. SUMMARY OF ARGUMENT AND STATEMENT OF ISSUES

The purpose of interlocutory certification is to enable early resolution of potentially dispositive issues before the district court or the parties expend substantial time or resources on

litigation. Given the questions on which Rhode Island seeks review, interlocutory certification cannot perform that function. At most, these questions will simply alter the parties' settlement positions.

In its Memorandum and Order denying Rhode Island's Motion to Dismiss, this Court rightly held that a pattern or practice case brought by the Attorney General pursuant to Title VII's Section 707(a) is (1) not subject to any of the procedural requirements of Section 706, including Section 706's limitations on backpay liability, and (2) is not subject to any statute of limitations. (Dkt No. 22 at 2). In the present motion, Rhode Island has asked the Court to certify for interlocutory appeal the following questions: (1) Whether Title VII's limitations on backpay liability under Section 706 are applicable when the Attorney General files a Section 707(a) action; and (2) Whether a state statute of limitations applies to the Attorney General when he brings a Section 707(a) action seeking individual relief. (Dkt. No. 29-1 at 3). Rhode Island's Motion to Certify should be rejected because its bases for interlocutory review are simply a rehashing of Rhode Island's previous attempt to preemptively limit the damages for which it may ultimately be held liable after the remedial phase of this bifurcated litigation. Since Rhode Island has admitted that the questions it seeks to have certified for interlocutory review relate to its damages exposure, it appears that Rhode Island seeks certification by this Court of those issues primarily to improve its settlement position and not because interlocutory review will be dispositive of issues that are in dispute.

Rhode Island fails to establish even *one* of the *three* prongs necessary for interlocutory certification:

(1) The issues Rhode Island raises are not controlling questions of law because both discovery and trial will continue largely unchanged regardless of any resolution of the damages

questions Rhode Island seeks to certify. In fact, the first issue Rhode Island seeks to certify – the question of Section 706's backpay limit on this Section 707(a) case – has little practical effect on this case. The United States already has agreed to limit the backpay relief it will seek in this case to a period beginning two years before its Notice of Investigation letter. Thus, the positions of the parties are only four years apart – not fourteen years as implied by Rhode Island in its motion.

(2) There is also no substantial authority to call into question this Court's holdings on the questions it seeks to have certified; the weight of authority is consistent with this Court's rulings.

(3) Rhode Island is not seeking certification of any issue that would materially advance the termination of this litigation because a decision in Rhode Island's favor would not dismiss a single claim of the United States in this case or definitively resolve any facet of this litigation, even backpay liability.

Rhode Island's Motion to Certify epitomizes why courts in the First Circuit disfavor certifying interlocutory appeals of motions to dismiss. The issues for which Rhode Island seeks certification – its damages exposure – could be rendered moot if the United States loses the liability phase. In that case, neither this Court nor the First Circuit will ever need to reach questions about the proper remedies, so having the First Circuit decide remedy questions at this juncture is premature. And, if this Court does find liability, the questions Rhode Island seeks to appeal now will only partially resolve the damages in this case. Even the damages issue will be the subject of further proceedings in the remedial phase of this litigation if the United States prevails. The Court will determine the class of victims eligible for relief and the amount of backpay for which Rhode Island is liable only after a finding on liability and remedial phase discovery. Thus, a decision by the First Circuit on damages at this point would be premature.

## II. LEGAL AND PROCEDURAL BACKGROUND

The United States filed the Complaint in this action on February 10, 2014, pursuant to the Attorney General's independent authority under Section 707(a) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-6(a). *See* Dkt. No. 1 at ¶ 1. The United States' Complaint alleges that Rhode Island used a written examination and a video examination to select individuals for entry-level correctional officer positions from 2000 through the present that violate Title VII. *Id*. ¶¶ 31-33. Specifically, the Complaint alleges that Rhode Island's use of the written and video examinations, separately and in combination, has disproportionately excluded African-American and Hispanic candidates for correctional officer positions and that these examinations are not job related and consistent with business necessity. *Id*. This action has been bifurcated into liability and remedial proceedings, whereby the issue of relief will not be reached unless there is a finding of liability in favor of the United States. (Pretrial Order, Dkt. No. 26 at 1).

Rhode Island filed a Motion to Dismiss the United States' Complaint and argued that the United States had failed to complete the procedural prerequisites for bringing a pattern or practice suit under Title VII. (Dkt. No. 9). Rhode Island also sought to limit the time period for which the United States could seek individual relief. *Id*. In its Opposition to the Motion to Dismiss, the United States responded that as a matter of law the prerequisites for a Section 706 action do not apply to suits brought by the Attorney General under Section 707(a) and that the United States is not constrained by any statute of limitations when bringing a Section 707(a) action. (Dkt. No. 14). Nevertheless, during oral argument the United States clarified that it is only seeking backpay relief in this case beginning two years before the Notice of Investigation letter (*i.e.* from September 2007) to the present.

In its Memorandum and Order denying Defendants' Motion to Dismiss, the Court noted that "in practical effect the DOC's Motion to Dismiss functions alternatively as a Motion to Limit Damages." (Dkt. No. 22 at 2 n.2). Indeed, during oral argument, Rhode Island agreed with this Court that it was not seeking to dismiss the United States' Complaint in its entirety; rather, it was "asking that the claims for relief be limited." (Dkt. No. 21, Tr. 8/05/14 p. 4 at 21-22). In the present Motion to Certify for Interlocutory Appeal, Rhode Island again attempts to limit the scope of the damages that the United States may seek, either through the backpay limitations in Title VII's Section 706 or through the application of a state statute of limitations to limit individual relief. Rhode Island is not seeking to certify an issue that would dismiss a single one of the United States' claims in its entirety or to resolve definitively any aspect of this litigation. (Dkt. No. 29-1 at 2-3).

## III. LEGAL STANDARD

Rhode Island has filed a motion for leave to file an interlocutory appeal under 28 U.S.C. § 1292(b). Interlocutory appeals under Section 1292(b) require an order (1) "involv[ing] a controlling question of law," (2) "as to which there is substantial ground for difference of opinion," and (3) for which "an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). The party seeking review under Section 1292(b) "must convince both the district court and the court of appeals that his motion satisfies all three factors." *Cummins v. EG & G Sealol, Inc.*, 697 F. Supp. 64, 68 (D.R.I.1988).

Federal law "abhors piecemeal appeals disputing interlocutory district court orders." *Cummins*, 697 F. Supp. at 67; *see also Bank of New York v. Hoyt*, 108 F.R.D. 184, 189 (D.R.I. 1985). Interlocutory appeals should be granted only in those "exceptional cases where an immediate appeal may avoid protracted and expensive litigation and is not intended to open the

floodgates to a vast number of appeals from interlocutory orders in ordinary litigation." *Cummins*, 697 F. Supp. at 68 (citing *Milbert v. Bison Laboratories*, 260 F.2d 431, 433 (3d Cir. 1958)). Even then, "interlocutory appeal is a tool which should be employed with surgical precision; the nature of the issue vis-a-vis the case as a whole, and the timing and the juxtaposition of the attendant circumstances, must conduce to its use." *Bank of New York*, 108 F.R.D. at 190. In sum, "the instances where section 1292(b) may appropriately be utilized will, realistically, be few and far between." *In re San Juan Dupont Plaza Hotel Fire Litig.*, 859 F.2d 1007, 1010 n. 1 (1st Cir. 1988). Put more colorfully, appeals under section 1292(b) are "hen's-teeth rare." *Camacho v. P.R. Ports Auth.*, 369 F.3d 570, 573 (1st Cir. 2004).

Of special salience to this case, the First Circuit repeatedly has held that interlocutory certification should be even rarer for a motion to dismiss. Granting interlocutory appeals from a denial of a motion to dismiss is disfavored because of "prudential concerns about mootness, ripeness and lengthy appellate proceedings" even if the moving party otherwise meets the strict standards for an interlocutory appeal. *Caraballo-Seda v. Municipality of Hormigueros*, 395 F.3d 7, 9 (1st Cir. 2005); *Estates of Ungar v. Palestinian Auth.*, 228 F. Supp. 2d 40, 50 (D.R.I. 2002) (citing *McGillicuddy v. Clements,* 746 F.2d 76, 76 n.1 (1st Cir. 1984)); *see also Cummins*, 697 F. Supp. at 69 ("an order denying a motion to dismiss is not the proper subject for § 1292(b) review.").

## IV. ARGUMENT

### A. Neither Question Defendants Seek to Have Certified Involves A Controlling Question Of Law

Defendants have not and cannot establish that the damages issues they seek to certify for appeal are controlling. To the contrary, this litigation – both discovery and trial – will be

conducted in largely the same manner regardless of any resolution of these questions. The damages issues Rhode Island seeks to certify would not limit the scope of the present *liability* proceedings in any meaningful way and would have limited practical effect on the overall litigation.

*1. Neither question presented for certification by Defendants would limit the scope of the ongoing liability proceedings in this case.*

Both questions that Defendants seek to have certified are questions about the individual relief that the United States may ultimately be awarded, rather than questions that would limit the overall liability period for which the United States may establish that a violation of Section 707(a) occurred. The United States seeks injunctive relief as well as individual relief for victims of the challenged practices from 2000 through the present. The injunctive relief sought is a court order that Defendants may no longer use any of the examinations challenged in this action – a written and video examination that have been used from 2000 through the present – as well as a requirement that they develop a new correctional officer selection procedure that fully complies with Title VII. The individual relief is in the form of both backpay and priority offers of employment. While Defendants seek to limit one or both kinds of individual relief, they have presented no argument that would forestall the United States from challenging Rhode Island's use of the written and video examinations dating back to 2000 for purposes of injunctive relief.

Defendants' first question, about the backpay limit in Section 706, does not affect the overall liability period for which the United States may establish that a violation of Section 707(a) occurred. The United States' ability to challenge the continuous use of the challenged examinations since 2000 is independent of any decision on the scope of backpay relief. The difference in the backpay accrual period versus the time period for challenging unlawful

employment practices is illustrated in *United States v. City of Warren, Michigan*, 138 F.3d 1083 (6th Cir. 1998), where the court held that the United States could only seek backpay beginning in 1984 but still noted that the United States could reach back to 1972 (the year that Title VII became effective against state and local governments) to establish liability and identify victims of the challenged practices. 138 F.3d 1083 at n.2 Therefore, even a ruling in favor of Defendants would affect only the backpay component of the relief the United States can seek.

As to Defendants' second question, the United States assumes that Defendants are arguing that the application of Rhode Island's statute of limitations would limit *all* individual relief in this case, thereby barring the United States from seeking both backpay and hiring relief for victims of the challenged employment practices who fall outside of the three year statute of limitations. Even so, Rhode Island has conceded that no statute of limitations applies to the United States when it acts in its sovereign capacity and seeks injunctive relief. (Rhode Island's Reply to the Department of Justice's Opposition to the Motion to Dismiss, Dkt. No. 16 at 2, 8-9). Therefore, a favorable ruling for Defendants on this question would not affect the United States' ability to challenge Rhode Island's conduct dating back to 2000 for the purpose of seeking injunctive relief.

*2. A decision on Rhode Island's damages exposure would not limit the complexity of litigating this Section 707(a) pattern or practice case.*

Rhode Island's arguments that a decision on its damages exposure – through either Section 706 or a state statute of limitations – "will necessarily define and shape this case" and "save significant time and expense, reduce the discovery and evidence required for trial, and thus promote judicial economy," (Dkt. No. 29-1 at 3) are simply incorrect. As this Court has noted, "a legal question cannot be termed 'controlling' if litigation would be conducted in much the

same manner regardless of the disposition of the question upon appeal." *Atrion Networking Corp. v. Marble Play, LLC*, 31 F. Supp. 3d 357, 359 (D.R.I. 2014) (citation omitted). This is precisely what would occur in this case despite Rhode Island's arguments to the contrary.

Indeed, resolution of the issues Rhode Island seeks to appeal would not substantially limit discovery, narrow the triable issues of fact, or otherwise avoid any complexities inherent in litigating this Title VII pattern or practice case because the United States has challenged continuous employment practices that have existed since 2000. (Dkt. No. 1 at ¶¶ 9-10, 34). Regardless of how far back the United States may reach for individual relief in the *damages* phase of this litigation, the *liability* phase will require evidence at trial and discovery of documents and information at least back to 2000 to establish that a violation of Section 707(a) has occurred throughout the challenged time period. For example, based on its pre-litigation investigation, the United States believes that Rhode Island, among other things, will be using a validity report from 1996 to support its use of the written exam since 2000, and a validity report from 1999 to support its use of the video examination since 2000. This will be true irrespective of any limitation placed on the United States' ability to seek individual relief.

In fact, the United States' Initial Disclosures (Dkt. No. 31), filed by Defendants, further illustrate how the scope of discovery that will be needed in this matter will not be meaningfully altered by a decision of the issues Defendants seek to have certified. The United States has identified thirteen categories of individuals who have knowledge relevant to the United States' claims. None of these categories of individuals would be eliminated by resolution of either of the questions Rhode Island seeks to have certified for appeal. Therefore, even if Rhode Island were to prevail on its arguments regarding its ultimate damages exposure, the scope of discovery and evidence in the present *liability* phase of this bifurcated action would be essentially

unchanged.

3. *Even if Section 706's backpay limitation applies, it has limited practical effect on Rhode Island's ultimate exposure in this case.*

Even beyond the fact that resolving the question of whether Section 706's backpay limitation applies to this Section 707(a) action cannot "define and shape" the liability phase, it also would have little practical effect on the litigation in its entirety. The United States already has agreed to limit the backpay relief it will seek to two years from its Notice of Investigation letter (*i.e.* September 2007). Rhode Island argues that the United States should instead be limited to seeking backpay to two years from when the United States sent Rhode Island a Notice of Suit letter in this case (*i.e.* November 2011). Therefore, the positions of the parties are only four years apart – not fourteen years as implied by Rhode Island. As discussed above, the application of this backpay limit does not affect the overall time period for liability in this action or the pool of individuals who may be deemed victims of those practices. Thus, the practical effect of the interlocutory certification is to try to limit four years of backpay. This is not an issue that will define this litigation.

B. <u>Defendants Have Not Identified A Substantial Ground For Difference of Opinion On A Controlling Question Of Law</u>

This Court exhaustively considered the statutory history of Section 707(a) of Title VII, federal caselaw, and other analogous federal statutes in holding that "the Attorney General need not clear the procedural hurdles set forth in Section 706 of Title VII, and is not bound by a statute of limitations[.]" (Dkt. No. 22 at 2). Nonetheless, Rhode Island argues that the Attorney General must be subject to the backpay limit of Section 706 or a Rhode Island state statute of limitations. Defendants' reliance on *United States v. City of Warren, Michigan*, 138 F.3d 1083 (6th Cir. 1998) and *United States v. Fresno Unified School District*, 592 F.2d 1088 (9th Cir.

1979); a dissent in conflict with current Supreme Court precedent; and their policy disagreements with Title VII's statutory language do not establish the substantial ground for difference of opinion required for interlocutory appeal.

In order to establish that there is a "substantial ground for difference of opinion," Rhode Island must show that there is substantial authority to call into question this Court's holding. *See Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010). The *Couch* opinion noted "just because counsel contends that one precedent rather than another is controlling does not mean there is such a substantial difference of opinion as will support an interlocutory appeal." *Id.* (quoting 3 Federal Procedure, Lawyers Edition § 3:212 (2010)). "[T]he touchstone of the 'substantial ground' prong is the likelihood of success on appeal." *United States ex rel. LaValley v. First Nat'l Bank of Bos.*, 1990 WL 112285, at *5 (D. Mass. July 30, 1990). Thus, for there to be a substantial ground for difference of opinion, "there must be 'substantial doubt' that the district court's order was correct." *N.F.L. Ins. Ltd. v. B & B Holdings, Inc.*, 1993 WL 255101, at *2 (S.D.N.Y. July 1, 1993) (quoting S.Rep. No. 85–2434, at 3 (1958), reprinted in 1958 U.S.C.C.A.N. 5255, 5257). In this case, there is no reason for such doubt.

*1. The weight of authority supports this Court's holding that Section 706's backpay limitations do not apply to Section 707(a) actions.*

The weight of authority conclusively supports this Court's finding that Section 706's requirements – including the limit on backpay – do not apply to actions brought by the Attorney General under Section 707(a). (Dkt. No. 22 at 11-12; Dkt. No. 14 at 8-10). Rhode Island's reliance on *City of Warren* and *Fresno Unified School District* cannot create the "substantial doubt" that the standard for interlocutory appeal requires.

Rhode Island relies on *Fresno Unified School District*, to try to cast doubt on this Court's decision that Section 706's procedural requirements, including backpay limits, do not apply to Section 707(a) cases. However, as noted in the Court's Memorandum and Order, *Fresno* is a 35-year-old case and the language upon which Rhode Island places so much weight is *dicta*, as the Ninth Circuit was merely speculating on a question that was not before it. (Dkt. No. 22 at n.8). No other court in the intervening 35 years has adopted Rhode Island's proffered reading of Title VII. To the contrary, every court actually to decide this matter has reached the opposite conclusion – some while explicitly rejecting *Fresno*. (Dkt. No. 14 at 9). This Court should therefore reject Rhode Island's attempt to use *dicta* from one case, from the Ninth Circuit, that was decided 35 years ago, to bolster its argument that that there is substantial authority to call into question this Court's holding.

Rhode Island's reliance on *City of Warren* is similarly misplaced. First, even if *City of Warren* were relevant, Rhode Island must do more than point to one case, from another circuit, to establish that there is substantial ground for difference of opinion. After all, this Court has found that a party moving for certification cannot establish a substantial difference of opinion by merely pointing to *one* conflicting opinion or by claiming that there "is a dearth of cases." *Atrion Networking Corp.*, 31 F. Supp. 3d at 360 (quoting *White v. Nix*, 43 F.3d 374, 378 (8th Cir. 1994); *see also Head v. Farm Bureau Gen. Ins. Co. of Mich.*, 2005 WL 2173568, at *5 n. 1 (E.D. Mich. Sept. 6, 2005); *Oyster v. Johns–Manville Corp.*, 568 F. Supp. 83, 88 (E.D. Pa. 1983) ("[a] single case demonstrates that while there may be grounds for differences of opinion, they are not, however, *substantial*").

Moreover, the context in which the Sixth Circuit addressed backpay liability in *City of Warren* is totally inapposite to the present matter. In *City of Warren*, the Sixth Circuit was

reviewing a district court's determination of when the backpay accrual period began, which was made during the remedial phase after liability findings and relief phase discovery occurred. 138 F.3d at 1094-96. Rhode Island's reliance on *City of Warren* thus falls far short of establishing substantial doubt about the correctness of this Court's decision.

*2. The weight of authority supports this Court's holding that no state statute of limitations applies to the Attorney General when he brings a Section 707(a) action.*

As the Court determined in its Memorandum and Order, no statute of limitations applies to limit actions brought by the Attorney General because "even when pursuing individual benefits in a Title VII case, the Government acts within its sovereign capacity" and the "United States government need not adhere to any statute of limitation when enforcing sovereign rights, unless Congress has expressly created a time limit." (Dkt. No. 22 at 18, 19). This Court's ruling is consistent with the relevant Supreme Court precedent. (Dkt. No. 14 at 14, 15). Rhode Island's clinging to *Georgia Power* does not create a substantial difference of opinion. As explained in this Court's Memorandum and Order, "subsequent precedent has eroded the force of *Georgia Power*." (Dkt. No. 22 at 17 discussing *United States v. Georgia Power Co.*, 474 F.2d 906 (5th Cir. 1973)). Nor can Rhode Island establish a "substantial difference of opinion" – as it attempts to do in its present motion – by relying on the *dissent* from *Occidental Life Ins. Co. of Cal. v. EEOC*, 432 U.S. 355, 367-72 (1977). (Dkt. No. 29-1 at 9-10). Reliance on a nearly 40-year-old dissent is particularly unavailaing where, as here, the Court's decision is supported by more recent Supreme Court precedent, *i.e. EEOC v. Waffle House, Inc.*, 534 U.S. 279 (2002), and *Gen. Tel. Co. of the Nw., Inc. v. EEOC*, 446 U.S. 318 (1980). (Dkt. No. 22 at 19-20). One 42-year-old Fifth Circuit opinion and one 38-year-old dissent, both of which have been superseded by subsequent precedent, do not cast substantial doubt as to the correctness of this Court's holding.

*3. Defendant's policy disagreements with the statutory construction of Title VII do not constitute a substantial ground for difference of opinion.*

Rhode Island spends several pages rehashing its opinions on why *some* limitation on the United States' ability to seek backpay *should* apply to the Attorney General when he brings a Section 707(a) action. (Dkt. No. 29-1 at 3-5, 9-10). In denying the underlying Motion to Dismiss, after a thorough review of the legislative history of Title VII, federal caselaw, and analogous federal statutes, this Court held that – as a matter of law – there is no such limitation on the 707(a) power of the Attorney General. (Dkt. 22 at 22). Defendants opine that the Court's holding "perpetuates an asymmetrical enforcement scheme" within Title VII that allows the Attorney General to "circumvent the central purpose and framework of Title VII." (Dkt. No. 29-1 at 3, 10). But Defendant's continued disagreement with this Court and the weight of legal authority, unsupported by precedent, does not create substantial doubt that this Court's holding is correct as a matter of law.

C. <u>An Interlocutory Appeal Will Not Materially Advance the Termination of This Litigation</u>

The issues for which Rhode Island seeks certification – its damages exposure – will not result in a final resolution of any aspect of this litigation, not even the issue of Defendants' backpay liability. The idea that a decision on Rhode Island's damages exposure is an appropriate use of the interlocutory appeal power is almost by definition wrong because it cannot materially advance the termination of litigation. All that an immediate appeal could advance is Rhode Island's settlement posture, and improving Rhode Island's settlement posture does not constitute material advancement in the termination of litigation.

1. *As a matter of law, the damages questions Rhode Island seeks to certify will not materially advance the termination of this litigation.*

"[T]he requirement that an appeal may materially advance the ultimate termination of the litigation is closely tied to the requirement that the order involve a controlling question of law." *Philip Morris Inc. v. Harshbarger*, 957 F.Supp. 327, 330 (D. Mass. 1997) (quoting 16 Charles Alan Wright et al., *Federal Practice and Procedure* § 3930 at 432 (2d ed. 1996)). Courts in the First Circuit have held that interlocutory appeals are only appropriate where the certified question(s) will help resolve a significant aspect of the case. Where there are multiple issues involved in the litigation and certification would not resolve any issues, interlocutory appeal is inappropriate. *See Cummins*, 697 F. Supp. at 71. A question will not materially advance the termination of litigation if the litigation will continue on the same factual basis, largely unchanged. *See Caraballo-Seda*, 395 F.3d at 9. The party moving for certification must present more than mere "conjecture in support of his claim that certification may save the court and the parties substantial time and expense." *Cummins*, 697 F. Supp. at 72 (citations omitted); *see also Palandjian v. Pahlavi*, 782 F.2d 313, 314 (1st Cir. 1986).

Two cases Defendants cite – *Cummins v. EG & G Sealol, Inc.*, 697 F. Supp. 64 (D.R.I.1988) and *Camacho v. P.R. Ports Auth.*, 369 F.3d 570 (1st Cir. 2004) – actually undermine their argument. The *Cummins* court held that the possible dismissal of only one of the two counts in the Complaint would not materially advance the termination of the litigation and was not appropriate for interlocutory review. 697 F. Supp. at 71. The court denied interlocutory certification because the litigation would continue on at least one count regardless of the outcome of the interlocutory appeal and the factual issues for discovery and trial would be largely the same. *Id*. The court determined that it would be more efficient to proceed with the

litigation because further proceedings at the district court level would either render the issue moot or result in a final decision that would be more appropriate for additional review. *Id* at 69.

Under the reasoning in *Cummins*, it is even clearer in this case that interlocutory appeal is not warranted and should be denied. First, resolution of the questions posed by Defendants would not resolve even one of the United States' three claims in its entirety, while in *Cummins* one claim would have been resolved by an interlocutory appeal. Second, Rhode Island's damages questions are premature for resolution by the First Circuit since the scope of any relief in this case might be rendered moot by additional proceedings, such as a finding in favor of Defendants at the end of the liability phase. It is clear that even if the damages questions raised by Rhode Island are not rendered moot, under the rationale in *Cummins*, it would be more appropriate to allow appellate review of Defendants' questions after the district court has made a final determination on the scope of damages. That determination cannot occur until the remedial phase of this litigation, assuming that the United States prevails on liability.

*Camacho* similarly provides no support for Defendants' argument here. In *Camacho*, the district court certified the question of whether the defendant was plaintiff's employer and subject to suit at all under the Age Discrimination in Employment Act, 29 U.S.C. §§621-634 ("ADEA"). 267 F. Supp. 2d 174, 175-76 (D.P.R. 2003). In certifying this issue, the district court emphasized that a decision on whether the defendant was plaintiff's employer and subject to suit under the ADEA was dispositive of the plaintiff's ADEA claims, which were subsequently dismissed in their entirety as a result of the ruling by the First Circuit. *Id.* at 178; *Camacho v. P.R. Ports Auth.*, 369 F.3d at 577-79. The questions posed by Rhode Island will not have any comparable effect on this litigation. An appeal on the damages questions Defendants seek to have certified will not be a final resolution of the issue of backpay, let alone a resolution of any of the United

States' three Title VII claims. In sum, the damages issues Rhode Island seeks to certify are not comparable to the outcome determinative issues that justify interlocutory appeal.

*2. As a factual matter, certification of the damages questions posed by Rhode Island will not definitively resolve any aspect of this litigation.*

A favorable ruling on either question raised by Rhode Island would not definitively resolve the issue of backpay, much less any other facet of this complex litigation. This action has been bifurcated into liability and remedial phases. (Dkt. No. 26 at 1). The issue of damages is not ripe for a final determination at this early stage in the litigation. The Court will be able to make a final ruling on Rhode Island's backpay liability in this matter only after the completion of the liability phase, a finding in favor of the United States on liability, and discovery on remedies. This backpay determination will be affected by several issues that have not yet been reached in this litigation, including which of the three challenged employment practices violate Title VII, who the victims of those practices are, and the monetary damages suffered by those victims. Further, this damages determination can be made only after remedial phase discovery, which will likely involve expert reports regarding contested issues such as earnings projections and appropriate mitigation methodology.

*3. Improving Rhode Island's settlement position does not constitute material advancement of the termination of this litigation.*

Rhode Island's argument that certifying these questions for appeal will assist with settlement, even if true, cannot justify interlocutory certification. (Dkt. No. 29-1 at 11-12). Indeed, the increased likelihood of settlement is not sufficient to warrant certification under Section 1292(b). *See Ashmore v. Ne. Petroleum Div. of Cargill, Inc.*, 855 F. Supp. 438, 440 (D. Me. 1994). In *Ashmore*, the party moving for certification under Section 1292(b) argued that resolving the issue of treble damages on appeal would make settlement more likely. The court

recognized that "although settlement may be somewhat more probable over time" if a decision on damages was reached, this "increased probability of settlement" does not justify certification. *Ashmore*, 855 F. Supp. at 440. Just as is true in this case, the *Ashmore* judge reasoned that certifying the question for interlocutory appeal would not materially advance the termination of litigation since "discovery, trial preparation, and litigation will progress in substantially the same manner whether or not the question" is certified. *Id*. For the same reason, Rhode Island's attempts to limit the scope of the damages that it may ultimately be held liable for in order to improve its bargaining power in settlement negotiations simply fails to meet the standard for materially advancing the termination of the litigation.

## V. CONCLUSION

For the reasons set forth above, Rhode Island has not satisfied the rigorous requirements necessary to support the Court granting an interlocutory appeal from a Motion to Dismiss. As such, the United States requests that the Court deny Defendants' Motion to Certify for Interlocutory Appeal the District Court's Memorandum and Order Denying Defendants' Motion to Dismiss.

Dated: April 20, 2015

Respectfully submitted by,

PETER F. NERONHA
United States Attorney
District of Rhode Island

VANITA GUPTA
Principal Deputy Assistant Attorney General
DELORA L. KENNEBREW
Chief
Employment Litigation Section
Civil Rights Division

/s/Raheemah Abdulaleem
CLARE GELLER
(NY Reg. No. 4087037)
Deputy Chief

ELIZABETH B. BANASZAK
(IL Bar No. 6299035)
RAHEEMAH F. ABDULALEEM
(PA Bar No. 201476)
Senior Trial Attorneys
Civil Rights Division
Employment Ligation Section
950 Pennsylvania Ave., NW, PHB
Washington, DC 20530
Telephone: (202) 307-2034
raheemah.abdulaleem@usdoj.gov
Fax: (202) 514-1105
*Counsel for Plaintiff United States*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 20, 2015, a true and correct copy of "Plaintiff United States' Opposition to Defendants' Motion to Certify for Interlocutory Appeal the District Court's Memorandum and Order Denying Defendants' Motion to Dismiss" was filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Neil F.X. Kelly (nkelly@riag.ri.gov)
Rebecca Tedford Partington (rpartington@riag.ri.gov)
Ariel Yaffee (ayaffee@riag.ri.gov)
Edward Mullaney (emullaney@riag.ri.gov)
Kathleen Kelly (kathleen.kelly@doc.ri.gov)

*/s/ Raheemah Abdulaleem*
Raheemah Abdulaleem