UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

UNITED STATES OF AMERICA,

      Plaintiff,

      v.

STATE OF RHODE ISLAND,
RHODE ISLAND DEPARTMENT OF
CORRECTIONS,

      Defendants.

Civil Action No.: 1:14-cv-78(S)

**PLAINTIFF UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANTS'
MOTION TO COMPEL 30(b)(6) DEPOSITION TESTIMONY**

Plaintiff United States of America ("Plaintiff" or "United States") submits this

Opposition to Defendants State of Rhode Island and Rhode Island Department of Corrections'

(collectively, "Defendants," "Rhode Island," or "RIDOC") Motion to Compel privileged

testimony at the Rule 30(b)(6) deposition of the United States.  For the reasons set forth below,

Defendants' motion should be denied, or, in the alternative, stayed until the Court receives a

transcript of the United States' 30(b)(6) deposition testimony to assess the specific questions

asked and privileges asserted.

**I.      STATEMENT OF THE ISSUES AND SUMMARY OF ARGUMENT**

Defendants request that the Court compel the United States to provide Rule 30(b)(6)

deposition testimony on matters where the United States has properly asserted privileges.

Among other things, Defendants ask that the Court order the United States to provide deposition

testimony about privileged communications among Department of Justice attorneys (or their

agents) regarding the United States' pre-suit investigations of Defendants, the United States'

confidential investigations of other jurisdictions, and the Attorney General's decision to authorize a lawsuit against Rhode Island, notwithstanding the United States' assertion of the work product, deliberative process, and investigatory file/process privileges.

The parties' dispute in this matter is narrow but very important to the ability of the Department of Justice to fulfill its enforcement mission. The United States already has agreed to provide factual testimony with respect to a number of the matters set forth in Defendant' Rule 30(b)(6) deposition notice. Additionally, the parties agree that the privileges in question are qualified, and may be overcome only upon a sufficient showing by Defendants. At issue, then, is (1) whether the remaining information sought is privileged; (2) whether the United States has properly asserted privilege objections to Defendants' amended Rule 30(b)(6) deposition notice; and (3) whether Defendants have made a sufficient showing that the privileges should be waived given the elements of Defendants' affirmative defenses.

The matters at issue necessarily delve into privileged information and the United States' assertions of privilege are proper. While Defendants claim that the United States' privileged information is necessary to support Defendants' affirmative defenses of laches and estoppel, and that their "substantial need" outweighs the United States' claims of privilege, Defendants have made no attempt to show that the privileged information they seek is necessary to support an estoppel or laches defense. Defendants have set forth neither the legal standards nor the evidentiary requirements for their affirmative defenses, nor attempted to demonstrate how the testimony sought would help satisfy those standards. Nor have defendants established their substantial need for the testimony, or shown that, absent that testimony, they would suffer undue hardship.

These omissions themselves warrant the denial of Defendants' motion.  However, not only have Defendants failed to make the demonstration necessary to overcome the United States' privileges, indeed, Defendants *cannot* make the required showing.  Simply put, the facts and information already available to Defendants, or that the United States has agreed to provide at the Rule 30(b)(6) deposition, are sufficient for Defendants to assert their laches and estoppel arguments.

Defendants' proposed inquiry into the United States' privileged communications is intrusive, unwarranted, and unnecessary.  As such, Defendants' motion ought to be denied outright.  Alternatively, the motion should be stayed and the deposition allowed to proceed, so that the Court may benefit from a transcript showing with specificity the questions asked and the privileges asserted.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    Investigations of RIDOC's Hiring Procedures

#### 1.  *Investigation of RIDOC's current hiring procedures*

The United States conducted an investigation into RIDOC's hiring procedures prior to the filing of the instant litigation.  That investigation lasted from September 1, 2009 to November 25, 2013.  The United States sent Rhode Island a Notice of Investigation letter on September 1, 2009, which stated that the Defendants were being investigated for a possible violation of Title VII with regard to RIDOC's employment practices for correctional officers and that, if a violation was found, litigation might result.  This was followed by another, more detailed letter on October 2, 2009, and an in-person meeting between the parties on October 23, 2009.  At that time, Rhode Island had been put on notice that the United States was looking at RIDOC's correctional officer hiring procedures from 2000 to the present for a possible violation of Title

VII's disparate impact provision with regard to African-American, Hispanic, and female applicants.

The parties' communications show that, as the DOJ investigation proceeded, it narrowed to focus on Defendants' written and video exams, and that the United States first sought information about the disparate impact of the exams before requesting Rhode Island's evidence that the exams were valid. There is evidence of substantial communications between the parties, including dozens of emails, letters, and phone calls throughout the course of the investigation, which illustrate that the information and data provided by Rhode Island was at times incomplete, contradictory, and without adequate explanation. The communications also show that the United States' inquiries were obstructed by the refusal of Rhode Island's video test developer to cooperate with the investigation. Additional details of the investigation are outlined in the United States' Opposition to Defendants' Motion to Dismiss (Dkt. 14 at 4-5), and in the documents referenced therein, and are incorporated by reference into this response.

Accordingly, it should come as no surprise that the United States strongly disputes Rhode Island's characterization of the United States' conduct during this investigation into RIDOC's current correctional officer selection procedure. The United States simply cannot agree that any Department of Justice ("DOJ") representative promised that a voluntary resolution, other than the contemporaneous filing of a consent decree with the complaint, would be offered if violations were found. Moreover, it strains belief that Defendants—having received notice in September 2009 that they were under investigation for possible civil rights violations, and thereafter having participated in a four-year investigation—did not understand that litigation might result if they were found to have violated federal law.

### 2. *1990's investigation of RIDOC's past hiring procedures*

Defendants also have alleged that a prior investigation by the United States into RIDOC's past hiring procedures, that was conducted between March 8, 1993 and May 15, 1996, is relevant to Rhode Island's affirmative defenses of laches and estoppel in the instant litigation. The United States likewise disputes Defendants' characterization of this prior investigation. Defendants describe the relationship between DOJ and RIDOC during the 1993-1996 investigation as "cordial" or as a "collaboration." But, letters between the parties paint a very different picture: Defendants refused to cooperate with the United States' investigation; stonewalled the government's attempts to gather information; tried and failed to extract promises from the United States in exchange for their cooperation with the investigation; exerted political pressure on various DOJ officials; and complained about the conduct of DOJ personnel up the Department of Justice chain of command, even to then-Attorney General Janet Reno.

B.      United States' Discovery Responses

The United States has produced non-privileged documents and information in the possession of the United States responsive to the written discovery requests served by Defendants, including non-privileged information and documents regarding the pre-suit investigation, and will continue to supplement its responses as needed.[1] As part of its initial

---

[1]     The United States responded to Defendants' First Request for Production of Documents ("RFP") on September 21, 2015. The United States supplemented its responses on November 3, 2015 and again on November 23, 2015, identifying which documents received from Rhode Island during the investigation were responsive to each RFP. A chart of responsive documents including the bates number, title and relevant RFP was included in our responses, going well above what is required under the Federal Rules. Additionally, the United States responded to Rhode Island's First Set of Interrogatories on September 14, 2015, and supplemented its responses twice on November 12, 2015 and January 20, 2016. Similar to the RFP responses mentioned herein, a detailed chart was included within the interrogatory responses, along with responsive information about the United States investigation.

disclosures, the United States reproduced the correspondence between the United States and RIDOC from the 2009-2013 investigation underlying the instant litigation, including all documents and data produced by RIDOC to the United States.  These materials were produced despite the fact that such information was as available to Defendants as it was to the United States.

The United States also responded to extensive discovery requests from Defendants, including interrogatories and RFPs, providing additional responsive documents and information about the pre-suit investigation.  To date, the United States has produced over 6,000 pages of documents (much of which originated from Rhode Island, and was equally available to Defendants), 130 pages of interrogatory responses, and 66 pages of responses to RFPs.  The government's production included hundreds of pages of pre-suit investigation communications between the United States and RIDOC, which outline the full course of the investigation that led to this lawsuit.

Furthermore, despite the United States' reservations about the relevancy of the 1993-1996 investigation to the instant litigation, the United States also produced all correspondence between the United States and Rhode Island pertaining to that prior investigation currently in the possession of the United States in response to Defendants' RFPs.

As the United States advised Defendants via letter on October 22, 2015, the United States did not produce a privilege log as part of its responses to written discovery because the parties agreed that they would not need to log internal, privileged communications exchanged (1) solely within the DOJ or between DOJ and our experts, or (2) solely within the Rhode Island Office of the Attorney General or amongst their office and their experts.  The United States explained to Defendants that, apart from these documents, it was withholding no other documents on grounds

of privilege.  Per the parties' agreement, Defendants also did not include internal communications or communications with their experts on their privilege log.  The United States therefore believes that it has responded fully and in good faith to all written discovery requests served by Defendants.[2]

  C.  Rhode Island's Rule 30(b)(6) Notice

Defendants now have served a Rule 30(b)(6) Notice of Deposition seeking to depose a representative of the United States on ten general topic areas.  The United States responded to the notice in writing on January 20 and to an amended notice on February 9, setting forth the general subject areas on which the government will designate a witness to provide testimony. The United States' letter also identifies the points at which the topics cross over into areas protected by the government deliberative process privilege, investigatory file/process privilege, work product privilege, and attorney-client privilege.  The United States' assertions of privilege are narrowly drawn to cordon off internal, pre-decisional deliberations and communications of the Department of Justice, as well as the internal investigative techniques and enforcement strategies of the Department tasked with enforcing the civil rights laws of this country.

What is lost in Defendants' motion is that the United States agreed to designate a witness to testify about a wide range of topics where the proffered privileges are not clearly implicated. The United States' designee will testify concerning the names, titles, dates, and general role of all DOJ personnel involved in both DOJ investigations of Rhode Island (Matters 1 &3); all

---

[2]  Defendants' repeated request in its motion that the court compel the production of *documents* that the United States has withheld on the basis of privilege (*See, e.g.,* Def. Mtn. at 12) is improper because (1) the motion purports to be a motion to compel deposition testimony and (2) Rhode Island has failed to meet and confer with the United States regarding any concerns Rhode Island may have regarding the United States' assertion of privilege over documents. Moreover, for the same reasons that the United States opposes the testimony sought by Defendants here, the United States will move for a protective order if Defendants recast their discovery requests as a demand for the United States' privileged documents.

communications between the United States and Rhode Island during both DOJ investigations of Rhode Island (Matters 2 & 6); various dates relevant to DOJ's investigation (Matter 4); any communications to Rhode Island by the United States regarding Hogan Assessment Systems, consultants, or any other testing companies (Matter 7); and any cases where any agent of Hogan Assessment Systems was retained by the Employment Litigation Section as a testifying expert (Matter 8).  The United States' objections were limited to instances where it was clear from the face of the matter asserted that Rhode Island intends to delve into topics that go straight to the heart of the United States' privileges.

Defendants' motion, therefore, reflects a fundamental misconception of what the United States already has provided in discovery and what testimony the United States has agreed to provide during the Defendants' Rule 30(b)(6) deposition.  For example, as to Matter 3, Defendants ask the Court to compel the United States to provide testimony regarding "who was involved" in the 2009-2013 investigation and "what information and data was obtained, reviewed, and analyzed." *See* Def. Mtn. at 13.  The United States already has told Defendants that it is willing to provide deposition testimony regarding the names, titles, dates, and general roles of all DOJ personnel involved in the pre-suit investigation. *Id*.  Furthermore, the United States already has produced all information and data it obtained and reviewed during the investigation—information and data that originated entirely from Defendants themselves.  What Defendants are actually seeking through this motion is much narrower than they portray it to be, and, furthermore, is at the core of the privileges asserted by the United States—information about the thoughts, analyses, actions, and deliberations of Department of Justice attorneys.

Because of the disconnect between the parties in terms of what information will be provided and what information is being sought, the United States advised Defendants, during the

meet and confer process, that it did not believe that a motion at this juncture would be fruitful and suggested that the parties proceed with the deposition in order to create a record of the actual questions and objections at issue before bringing the matter to the Court.  This approach would have allowed the parties to see what actually is in contention and brief a narrower and better crystallized dispute.  When the United States raised this concern with Defendants, Rhode Island declined to reconsider its decision to file the instant motion.

## III.    ARGUMENT

The information sought by Defendants is privileged, and the United States' assertions of privilege are proper and as specific as possible given the general nature of Defendants' Rule 30(b)(6) deposition notice.  Moreover, Defendants have made no showing of substantial need and undue hardship sufficient to overcome the privileges asserted by the United States.  Finally, for purposes of Defendants' affirmative defenses, the privileged information sought by Defendants is unnecessary because of the facts already within the record (or that the United States already has agreed to provide).  Defendants' motion should be denied.

A.    Defendants Are Seeking Information that Goes Directly to the Heart of the United States' Attorney Work Product, Deliberative Process, and Investigatory Files/Process Privileges

Defendants' motion seeks to compel the United States to disclose privileged information. In a lone paragraph, Defendants half-heartedly assert that the information sought in Defendants' Rule 30(b)(6) deposition notice is not privileged "because it is factual information."  *See* Def. Mtn. at 8.  That Defendants make no attempt to buttress their claim is understandable; their proposed inquiries directly implicate the privileges asserted by the United States—specifically,

the attorney work product, deliberative process, and investigatory file/process privileges—as well as certain protections afforded by the Federal Rules.[3]

### 1. *Attorney Work Product Privilege*

The attorney work product privilege shields from discovery materials prepared (1) "by or for another party or by or for that other party's representative," (2) "in anticipation of litigation or for trial." *United States v. Nobles*, 422 U.S. 225, 238 (1975); *Hickman v. Taylor*, 329 U.S. 495 (1947); Fed. R. Civ. P. 26(b)(3). The doctrine protects "work that 'is reflected . . . in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways' as long as it was prepared in anticipation of litigation." *Bryan Corp. v. Chemworth, Inc.*, 296 F.R.D. 31, 37 (D. Mass. 2013) (quoting *Hickman*, 329 U.S. at 511). The work product protection "facilitates zealous advocacy in the context of an adversarial system of justice by ensuring that the sweat of an attorney's brow is not appropriated by the opposing party." *In re Grand Jury Subpoena*, 274 F.3d 563, 574 (1st Cir. 2001).

Here, the Defendants acknowledge that they seek, among other things, the "factual bases *relied upon to reach the conclusions* in [DOJ's] investigations," Def. Mtn. at 8. (emphasis added), and propose to explore such topics as:

- "[I]nformation regarding how the DOJ analyzes [RIDOC] data," "what type of calculations are used to determine whether there is a pattern or practice of discrimination at issue," and "what validity standards are applied," *id.* at 15;

- "[I]f the DOJ conducted such analyses internally or relied on non-testifying experts," *id.* at 16; and

---

[3] While the United States also has asserted attorney-client privilege over some of the matters at issue, it does not appear that Rhode Island is challenging that assertion in its motion.

- In "any and all Title VII investigations conducted by the DOJ that were closed without the DOJ filing suit,…the steps involved in said investigations, and the reasons the DOJ did not ultimately file suit from 1995 to the present." *Id.* at 20-21.

These inquiries, on their face, probe the mental impressions, conclusions, or opinions of counsel for the United States, or would reveal the substance of materials prepared in anticipation of litigation, including the United States' analyses of data provided by RIDOC.  As such, they implicate the work product privilege.  *See Nobles*, 422 U.S. at 238 (1975).  As the Supreme Court has concisely stated: "At its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." *Id.*

Further, while the United States has offered to testify concerning a number of basic facts regarding its investigation, what remains—what Defendants seek in these topics—is counsel's "selection and compilation of relevant facts" that lies "at the heart of the work product doctrine." *E.E.O.C. v. HBE Corp.*, 157 F.R.D. 465, 466-67 (E.D. Mo. 1994).  Indeed, Defendants' attempt, through a Rule 30(b)(6) deposition of a plaintiff agency, to "explore the factual bases" of an agency's claims closely corresponds to what the district court held was an improper invasion of work product protection in *E.E.O.C. v. HBE Corp.  Id.*

Notably, *E.E.O.C. v. HBE Corp.* is not the only decision to recognize that such inquiries into counsel's marshalling of facts are an improper effort to delve into the work product of government counsel.  For example, in *E.E.O.C. v. McCormick & Schmick's Seafood Restaurants, Inc.*, 2010 WL 2572809 (D. Md. June 22, 2010), defendants sought testimony similar to that at issue in this motion, concerning "factual information and documents" supporting or rebutting the allegations set forth in the EEOC's complaint; "[s]tatistical information, facts and analysis

11

considered, used, developed, or prepared by the EEOC regarding the allegations in the Complaint;" and "factual information" concerning the EEOC's internal processes and procedures for reviewing complaints of discrimination. *Id.* at *1. In granting the EEOC's motion for a protective order barring the deposition in its entirety, the court noted that defendants' Rule 30(b)(6) notice asked for "EEOC's counsel's interpretation of the facts and how they have chosen to proceed in preparing their case." *Id.* at *5. The court held that the subjects outlined in defendants' Rule 30(b)(6) notice "facially target opinion work product," such that "an invasion of attorney work product would be inevitable." *Id.* at *6. *See also F.T.C. v. U.S. Grant Resources, LLC*, 2004 WL 1444951, at *9 (E.D. La. June 25, 2004) (Knowles, M.J.) (holding that defendant's attempt to depose plaintiff agency regarding investigation intended to "discern the deliberations, mental impressions, and/or thought processes upon which this action was predicated."); *S.E.C. v. Buntrock*, 217 F.R.D. 441, 444 (N.D. Ill. 2003) (Bobrick, M.J.) (prohibiting Rule 30(b)(6) deposition of plaintiff agency regarding investigation conducted by agency counsel on grounds that deposition would result in "disclosure of SEC attorneys' legal and factual theories.").

Finally, contrary to the plain text of the Federal Rules, Defendants also seek testimony concerning analyses and materials prepared by non-testifying experts and consultants in connection with the instant litigation (Matters 5, 10) and the 2009-2013 investigation of Rhode Island (Matter 3); as well as information concerning "the substance and involvement of Dr. Joyce Hogan, and/or any representative or agent of Hogan Assessment Systems, in any and all DOJ cases," even in a non-testifying expert role. *See* Def. Mtn. at 19. As such materials and information were created by the United States' consultants or experts at the direction of counsel and "in anticipation of litigation," they constitute protected work product. *See* Fed. R. Civ. P.

26(b)(3)(A).  Moreover, such materials also are exempted from disclosure pursuant to Fed. R. Civ. P. 26(b)(4)(D), which provides that, barring "exceptional circumstances," a party "may not, by . . . deposition, discover facts known or opinions held by an expert who has been "specially employed by another party in anticipation of litigation." *Id.*; *Plymovent Corp. v. Air Tech. Sols., Inc.*, 243 F.R.D. 139, 143 (D.N.J. 2007).

### 2.  *Deliberative Process Privilege*

The deliberative process privilege is intended to protect "advisory opinions, recommendations, and deliberations that are part of a process by which Government decisions and policies are formulated." *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 2 (2001).  It protects "predecisional" and "deliberative" communications—the "intra-governmental exchange of thoughts that actively contribute to the agency's decisionmaking process . . . ." *Texas Puerto Rico, Inc. v. Department of Consumer Affairs*, 60 F.3d 867, 884-885 (1st Cir. 1995).  Significantly, courts have held that government deliberations concerning whether to initiate litigation, or pursue a particular course of action in litigation, are protected by the deliberative process privilege.  *See Ridenour v. Kaiser-Hill Co.*, 397 F.3d 925, 939 (10th Cir. 2005); *E.E.O.C. v. California Psychiatric Transitions*, 258 F.R.D. 391, 397, 401 (E.D. Ca. 2009) (Austin, M.J.).

Also, lower courts in analogous cases have held that the deliberative process privilege encompasses internal agency policies pertaining to the conduct of investigations.  For example, in *E.E.O.C. v. Texas Roadhouse, Inc.*, 2014 WL 4471521 (D. Mass. Sept. 9, 2014) (Kelley, M.J.), defendants sought Rule 30(b)(6) testimony from the EEOC concerning, among other matters, "[f]actual information and documents concerning [the EEOC's] internal directives regarding the handling or investigation of systemic discrimination charges and the conciliation

13

process [privilege]." *Id.* at *6.  The court granted the EEOC's motion for a protective order with respect to this matter, holding that such information "is protected by the governmental deliberative process." *Id.  See also E.E.O.C. v. JBS USA, LLC*, 2012 WL 169981, at *5 (D. Neb. Jan. 19, 2012) (Gossett, M.J.) (holding that deliberative process privilege barred inquiry into internal agency policies or mandates regarding pattern-or-practice investigations).

Here, Defendants seek to inquire into the United States' internal deliberations with regard to its 1993-1996 investigation of Rhode Island's hiring practices, including the basis for the Department's decision not to pursue litigation (Matter 2); the United States' internal deliberations with regard to its 2009-2013 investigation underlying the instant litigation, up to and including the Department's decision to bring the instant litigation (Matter 4); the United States' internal deliberations regarding settlement of the instant litigation, including but not limited to internal deliberations regarding settlement prior to the filing of this litigation (Matter 6); and the United States' internal deliberations with regard to *every investigation undertaken by the Department for the past 21 years* (Matter 9).  *See* Ex. A, Declaration and Claim of Privilege on Behalf of the United States of America by Principal Deputy AAG Vanita Gupta, p. 2.  This apparently includes, for each such investigation, the Department's internal deliberations regarding whether any procedural requirements would bar or limit possible claims; what types of relief could or should be sought; whether and how to engage in pre-litigation settlement negotiations; and the basis for the decision to bring or not bring litigation in each such case. Such inquiries impair the government's interest in candid discussions and effective decision-making, *see* Ex. A, p. 3—and, as courts have consistently held, fall squarely within the ambit of the deliberative process privilege.

14

### 3. *Investigatory File/Process Privilege*

Investigatory files compiled for law enforcement purposes are protected under what is commonly referred to as the investigatory files or law enforcement privilege.[4]  *See Friedman v. Bache Halsey Stuart Shields, Inc.*, 738 F.2d 1336, 1341-44 (D.C. Cir. 1984).  The investigatory files privilege is necessary to protect law enforcement processes, and protects both civil and criminal investigative files from civil discovery.  *McPeek v. Ashcroft*, 202 F.R.D. 332, 336 (D.D.C. 2001).  It applies both to investigatory files and testimony concerning their contents during depositions regarding government investigations.  *See Arinder v. Lee*, 2000 WL 680343, at *2 (E.D. La. May 23, 2000) (Roby, M.J.).

Defendants' repeated requests that the United States identify in detail the steps taken in its 1993-1996 and 2009-2013 investigations (Matters 2 and 4); the "method of calculation by which the DOJ evaluated the RIDOC's employment and selection procedures" (Matter 5); or the steps taken in *any* Title VII investigation conducted from 1995 to the present (Matter 9) necessarily require testimony concerning the content of the files gathered by counsel for the United States during such investigations, including internal correspondence, memoranda, analyses, and attorney notes.  *See* Ex. A, pp. 2-3.  The exposure of this privileged information would work two harms: it would lay bare to subjects of future investigations the processes and methods by which the United States conducts its Title VII pattern-or-practice investigations and it would unfairly expose to public scrutiny current and past investigative targets—especially for those jurisdictions where the Department of Justice has found no wrongdoing.  *See id.* at 3.

---

[4]    While the United States in its January 20, 2016 letter referenced the "investigative files privilege," the "investigatory privilege," and the "investigative process privilege," the United States intends the terms to refer to the investigatory files privilege as described herein.

B.      The United States Has Properly Asserted Privilege Objections to Defendants'
        Rule 30(b)(6) Deposition Notice

Defendants complain that the United States' assertions of privilege are insufficiently

specific. *See* Def. Mtn. at 5.  However, as set forth above, Defendants' proposed topics inquire

into matters that obviously are privileged, and themselves make clear the sorts of information the

United States intends to withhold.  What is more, the United States' response to Defendants'

Rule 30(b)(6) deposition notice describes with as much precision as possible the basis for each

privilege assertion given the broad topics presented.  Since the United States was limited in

scope to general-notice topics, the United States cannot further clarify its objections absent

specific questions from Defendants.  Had Defendants taken the United States' suggestion that

the Rule 30(b)(6) deposition proceed as planned, specific inquiries could be met with specific

objections, leaving no question as to the nature of the information concerning which the United

States asserts privilege.

Not surprisingly, courts reaching the issue have approved this "question-by-question"

approach and have found that they could not decide assertions of attorney-client privilege,

deliberative process privilege, and work product doctrine prior to questions being asked at Rule

30(b)(6) deposition.  *See S.E.C. v. Merkin*, 283 F.R.D. 689, 694, 698 (S.D. Fla. 2012) (noting

that "[c]ounsel may protect against the disclosure of work product or privileged information in

30(b)(6) depositions by interposing appropriate objections and giving instructions on a question-

by-question basis," and listing cases); *E.E.O.C. v. Corrections Corp. of America*, 2007 WL

4403528, at *1 (D. Colo. Dec. 13, 2007).

C.      Defendants Have Not Made the Required Showing of Substantial Need and Undue Hardship to Demonstrate that the Privileged Material Should be Disclosed

The United States does not dispute that the work product, deliberative process, and investigatory file/process privileges it asserts are qualified.  However, Defendants have not met their burden to overcome the privileges asserted by the United States. A party seeking to cast aside the qualified privileges of an opposing party bears the burden of showing substantial need for the privileged information and undue hardship if the qualified privileges are allowed to stand. *See* Fed. R. Civ. P. 26(b)(3); *Maine v. Norton*, 208 F. Supp. 2d 63, 66-67 (D. Me. 2002) (deliberative process privilege); *In re The City of New York*, 607 F.3d 923, 945 (2d Cir. 2010) (investigatory process privilege).

Defendants have not made any particularized showing of substantial need or undue hardship, without which they cannot overcome the United States' privileges.  Over and over again, Defendants claim "hardship," without explaining (1) why they would be prejudiced; (2) how the privileged information is even necessary to their defenses; or (3) why Defendants' need outweighs the United States' interest in nondisclosure.  It is not enough for a party to generically claim they "have a right and a need to see the privileged documents that have been withheld"— indeed, were that the standard, no relevant document could ever be withheld on privilege grounds.  *See Maine*, 208 F. Supp. 2d at 66-67

The thrust of Defendants' argument is that they are entitled to the United States' privileged information because the information cannot be acquired from another source— essentially, that the privileges themselves work the hardship.  This is a tautology.  The information cannot be elsewhere acquired because it is *precisely* what the privileges protect—the mental impressions of opposing counsel and the internal deliberations of a government agency. *See, e,g,* Def. Mtn. at 15 (stating that how DOJ attorneys analyzed the relevant data, what

17

calculations they performed, and what standards they applied are "in the sole possession of the DOJ").  To hold that Defendants are entitled to this information merely because it cannot otherwise obtain it would eviscerate the privileges here at issue.  Moreover, as discussed above, Defendants are seeking *opinion* work product, which is subject to the highest level of protection and cannot be overcome absent a showing of "extraordinary justification."  *See Breon v. Coca-Cola Bottling Co. of New England*, 232 F.R.D. 49, 54 (D. Conn. 2005); *see also Upjohn Co. v. United States*, 449 U.S. 383, 399 (1981).  Since Rhode Island has not met their burden to overcome the lower threshold for qualified privileges generally, let alone the heightened showing for opinion work product, Defendants' motion should be denied.

> D.   Defendants Cannot Show that Their Affirmative Defenses of Estoppel or Laches Create a Substantial Need for Disclosure of the United States' Privileged Information

Defendants' motion failed to explain with any specificity *why* they need the United States' privileged information to establish their affirmative defenses of estoppel or laches. Instead, Defendants rely on conclusory statements that such information is "highly necessary." *See, e.g.,* Def. Mtn. at 10.  But a cursory review of the elements of each affirmative defense makes clear why Defendants opted for a perfunctory approach: the privileged information simply is unnecessary to Defendants' affirmative defenses.  Defendants therefore have offered no basis for the United States' privileges to be cast aside.

> 1.   *The United States' Privileged Information Sought by Defendants Has No Bearing on the Affirmative Defense of Estoppel*

Defendants' affirmative defense of estoppel does not compel the disclosure of privileged information.  Generally speaking, "[a] party seeking to assert estoppel must demonstrate that (1) the party to be estopped made a definite misrepresentation of fact to another person having reason to believe that the other [would] rely upon it; (2) the party seeking estoppel relied on the

18

misrepresentations to its detriment; and (3) the reliance [was] reasonable in that the party claiming the estoppel did not know nor should it have known that its adversary's conduct was misleading." *Nagle v. Acton-Boxborough Reg'l Sch. Dist.*, 576 F.3d 1, 3 (1st Cir. 2009) (internal quotations omitted).  However, to the extent estoppel is even viable against the federal government, there is a heightened standard that requires "extreme circumstances," and, at a minimum, a showing "that government agents have been *guilty of affirmative misconduct*." *Dantran, Inc. v. U.S. Dep't of Labor*, 171 F.3d 58, 66-67 (1st Cir. 1999) (emphasis added).  It is not enough for a party to rely on the erroneous advice of a government official.  *See Schweiker v. Hansen,* 450 U.S. 785, 789 (1981) (per curium).  Moreover, a party cannot claim detrimental reliance on the government when there is statutory guidance explaining their obligations under the law; thus, rendering such reliance unreasonable.  *See Dantran,* 171 F.3d at 67.

Defendants appear to claim that an attorney from the Department of Justice told them that DOJ would apprise Defendants as to the government's findings during the investigation, and, if a violation was found, would "work with" Defendants to find a mutually agreeable resolution short of litigation.  Defendants allege that the Department of Justice did not follow through on these supposed promises.

What Rhode Island has *not* shown is how any of the privileged information they seek about the internal analyses, actions, and deliberations of the Department of Justice have *any relevance* to this, or any, estoppel defense.  Estoppel is inherently about what Defendants believed and relied upon, and, therefore, must be based entirely on the communications between the parties and how *Defendants* interpreted and acted upon those communications.  If something was not communicated to Defendants, then they could not have relied upon it.  The United States has already reproduced the written communications between the parties from both the 1993-1996

19

and 2009-2013 investigations and has agreed to provide testimony regarding any and all communications between the parties, to the extent that such information is currently known to the United States.  Defendants have not shown—and cannot show—that any privileged information known solely to the United States has any relevance whatsoever to Defendants' affirmative defense of estoppel.

The United States denies that any such promises or assurances were made.  However, even viewing Defendants' estoppel argument in the light most favorable to Defendants and assuming Defendants' allegations are true, it falls far short of what is needed to prevail on an estoppel defense against the federal government.  At best, Defendants can demonstrate that they understood a Department of Justice employee to be making certain assurances, which were not in line with DOJ's subsequent conduct.  This simply does not rise to the level of affirmative misconduct necessary to prevail on an estoppel defense against the federal government.  In this context, the waiver of the government's privileges is particularly unwarranted to advance an affirmative defense where there is little to no chance of success on the merits.

### 2. Defendants Cannot Demonstrate that Their Affirmative Defense of Laches Creates a Substantial Need for the United States' Privileged Information

To establish laches, Defendants have the burden of showing both unreasonable delay and prejudice resulting from that unreasonable delay.  *See Costello*, 365 U.S. at 282; *Murphy v. Timberlane Reg'l Sch. Dist.*, 22 F.3d 1186, 1189 (1st Cir. 1994).  Here, Defendants cannot show that the United States' privileged information is necessary to their laches defense.  Therefore, Defendants have not and cannot meet their burden of showing the substantial need and undue hardship required to justify such a serious infringement upon the privileges of the United States.

20

>    a.  *The United States' Privileged Information is Not Needed for a Showing of Unreasonable Delay*

A defendant seeking to avail itself of the affirmative defense of laches bears the burden of establishing that there was a lack of diligence by the plaintiff, which resulted in an unreasonable delay in bringing its claims. *See Kansas v. Colorado*, 514 U.S. 673, 687 (1995) (quoting *Costello*, 365 U.S. at 282); *Murphy*, 22 F.3d at 1189. To demonstrate lack of diligence, a defendant can show that the plaintiff delayed filing suit for an unreasonable and inexcusable amount of time after plaintiff knew or should have known that it had a claim against defendant. *See Kansas*, 514 U.S. at 687; *A.C. Aukerman Co. v. R.L. Chaides Const. Co.*, 960 F.2d at 1020, 1032 (Fed. Cir. 1992) (citing *Costello*, 365 U.S. at 282). The focus of this inquiry, therefore, is when the plaintiff had either actual knowledge of its claims or sufficient information that constructive knowledge of its claims should be imputed to the plaintiff.

Here, it appears that Defendants will seek to establish the United States' lack of diligence by showing that too much time passed between when the United States knew or should have known that Defendants were violating Title VII and when the United States informed Defendants of such. The United States already has agreed to provide testimony on the dates of various events set forth in Matter 4 of Defendant's 30(b)(6) Notice, which seek to assess when the United States had actual knowledge of its claims. Defendants can also attempt to establish the point in time at which it believes it furnished sufficient factual information to the United States for the United States to have constructive knowledge that Defendants were violating the law. The evidence for that argument would be contained entirely in the communications between the parties. The United States has already produced the written correspondence between the parties from the investigation, which shows when documents and information were furnished to the United States. Furthermore, the United States has agreed to testify as to any communications

between the parties so that Defendants may confirm when particular information was conveyed to the United States and clarify any questions it has about those communications. Defendants' assertion that they need to know "the information the DOJ knew and when they knew it," Def. Mtn. at 16, can therefore be established solely on non-privileged information currently available to Defendants.

### b. The United States' Privileged Information is Irrelevant to Any Showing of Prejudice

Even if Defendants can establish that the United States was delinquent in bringing suit, (which the United States certainly intends to dispute), they also must establish that they were prejudiced by the delay. *See Costello*, 365 U.S. at 282. Prejudice must be established with a showing that Defendants have been harmed by the United States' unreasonable delay in bringing suit. A showing of prejudice can be gleaned from a number of sources, but they all originate from Defendants: prejudice can be either "evidence-based" (including such things as lost, stale, or degraded evidence) or "expectations-based" (that defendant took actions or suffered consequences that it would not have had the plaintiff filed suit more promptly). *See Vineberg v. Bissonnette*, 548 F.3d 50, 57 (1st Cir. 2008). Such information already is in Defendants' hands.

Defendants are free to make any of these claims to support its laches defenses. But none of them require Defendants to obtain any information from the United States, let alone privileged information about the thoughts, analyses, actions, and deliberations of Department of Justice attorneys. Any information about evidence Defendants believe has been lost or harm it believes it has suffered is solely within the knowledge and control of Defendants themselves. An inquiry into the United States' privileged information is not relevant to a showing of prejudice—and therefore is needlessly invasive and flatly improper.

## IV.    CONCLUSION

For the foregoing reasons, the United States respectfully requests the Court deny

Defendants' motion.  In the alternative, the United States requests adjudication of this matter be

stayed until the completion of Rule 30(b)(6) deposition of the United States, which will provide

the court with a full transcript of the questions asked and privileges raised.


Dated: February 17, 2016


PETER F. NERONHA                        VANITA GUPTA
United States Attorney                  Principal Deputy Assistant Attorney General
District of Rhode Island                Civil Rights Division

                                        DELORA L. KENNEBREW
                                        Chief
                                        Employment Litigation Section

                          By:    */s Elizabeth Banaszak*
                                 CLARE GELLER
                                 (NY Reg. No. 4087037)
                                 ELIZABETH B. BANASZAK
                                 (IL Bar No. 6299035)
                                 DAVID N. REESE
                                 (AL Bar No. ASB-0887-I67R)
                                 KUNTI D. SALAZAR
                                 (CA Bar No. 279090)
                                 Trial Attorneys
                                 Employment Litigation Section
                                 Civil Rights Division
                                 United States Department of Justice
                                 950 Pennsylvania Avenue, NW, PHB
                                 Washington, DC  20530
                                 Telephone: (202) 353-1817
                                 Fax: (202) 514-1105

                                 *Counsel for Plaintiff United States of America*


23

## CERTIFICATE OF SERVICE

I hereby certify that on February 17, 2016, I filed the within Plaintiff United States'

Response in Opposition to Defendant's Motion to Compel 30(b)(6) Deposition Testimony using

the CM/ECF system where it is available for viewing and downloading.  The CM/ECF system

will send notification of such filing to the following:

> Neil F.X. Kelly (nkelly@riag.ri.gov)
> Rebecca Tedford Partington (rpartington@riag.ri.gov)
> Ariel Yaffee (ayaffee@riag.ri.gov)
> Edward Mullaney (emullaney@riag.ri.gov)
> Kathleen Kelly (kathleen.kelly@doc.ri.gov)
> Mariana E. Ormonde (mormonde@riag.ri.gov)


>                           */s Elizabeth Banaszak*
>                           Elizabeth Banaszak
>                           Trial Attorney

24