**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| *Plaintiff*, | : | |
| | : | |
| v. | : | |
| | : | C.A. 14-78S |
| STATE OF RHODE ISLAND, | : | |
| RHODE ISLAND DEPARTMENT OF | : | |
| CORRECTIONS, | : | |
| *Defendants*. | : | |

**STATE DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION TO**
**STATE DEFENDANTS' MOTION TO COMPEL 30(b)(6) DEPOSITION TESTIMONY**
**AND FOR AN EXPEDITED RULING**

State Defendants hereby submit the following Reply to Plaintiff's Opposition to the State Defendants' Motion to Compel 30(b)(6) Deposition Testimony from the Plaintiff. For the reasons set forth below, as well as those set forth in the State Defendants' Memorandum in Support of Its Motion to Compel (Doc. 55-1) and those to be advanced during the telephonic hearing scheduled for February 23, 2016, the State Defendants' request that their Motion to Compel certain 30(b)(6) testimony be Granted.

In its opposition, the DOJ accuses State Defendants of seeking solely privileged material. This is not an accurate representation of the State's position. The State Defendants are seeking—and are entitled to—the factual information surrounding the steps taken and information gathered by the DOJ during and between the 1993-1996 and 2009-2013 investigations as it is relevant and necessary to support certain of the State Defendants' affirmative defenses. As previously stated in its Memorandum in Support of Its Motion to Compel (Doc. 55-1), the affirmative defenses arise out of two inquiries by the DOJ into the RIDOC's employment practices, as well as representations and actions by the DOJ. In denying

1

the State's Motion to Dismiss on the limitations contained in Title VII and statute of limitations grounds, the District Court acknowledged that the State Defendants may press the affirmative defense of laches.  Both laches and estoppel sound in equity, and fundamental fairness requires that the DOJ provide the facts gleaned during this investigation without delving into the province of the qualified privileges asserted.

The State Defendants' 30(b)(6) notice sent to the DOJ can be plainly read and simply seeks factual information necessary to the State's right to defend itself.   In response, the DOJ distorts this into an argument that the State seeks only privileged information of the DOJ's thoughts, analyses, mental impressions, and deliberations.  The State's Motion to Compel establishes that the DOJ's blanket assertions of privilege lack merit, and that any asserted privilege is qualified and could not act as an absolute bar to foreclose the fact-gathering necessary to the State's defenses.

The State brings this Motion to set the ground rules for the upcoming deposition.  The DOJ suggests that the 30(b)(6) deposition take place and to have the Court rule on the admissibility of certain topics on a question-by-question basis.  State Defendants do not object to proceeding as such, however, an issue arises where, for example, the DOJ has stated that a deponent will not be designated (*e.g.* Matters 5 and 9), or where a blanket privilege is asserted. In such circumstances State Defendants will not have the opportunity to question a witness on the topic area, leaving the Court with no determination to make on whether the information is privileged because no information will have been provided.

The RIDOC has dedicated itself to promoting the diversity of its workforce over the years.  Part of this mission has been borne out by RIDOC′s recruitment and hiring efforts, and, relevant to this case, has been demonstrated by the RIDOC′s desire and willingness to work with

2

the DOJ to address potential issues with the selection process and by taking affirmative steps to comply with the dictates of Title VII.

In the first investigation in 1993-1996, the RIDOC and the Attorney General's Office ("RIAG") made multiple attempts to work and cooperate with the DOJ to improve the selection process, and sought DOJ assurances that the RIDOC could do so short of litigation. The DOJ refused to provide any assurances that the RIDOC would not be subject to litigation or that it could enter some kind of consent decree. Notwithstanding the lack of DOJ cooperation, RIDOC nonetheless took action to improve the hiring process. The RIDOC made expedient efforts to hire the DOJ recommended consultant and to begin improvement of the selection process. As stated by Robin Feder, former Assistant Attorney General representing the RIDOC at that time, "a level of trust developed with DOJ based on the actions taken by the State." Exhibit F, Robin Feder, Written Dep. Responses, No. 4. Ms. Feder also stated that "at the end of March 1996, I was confident that DOJ would not file suit against RIDOC as a result of RIDOC's doing everything it could to create a hiring process and CO corps that would be as diverse and qualified as possible." *Id.* at No. 5(b). In May 1996, the RIDOC and RIAG received a letter informing them that the DOJ had completed their investigation and would not be taking any action at that time.

The DOJ returned in 2009, twelve years later, seeking information about the RIDOC's employment practices from 2000. This time, DOJ representatives came to Rhode Island and made assurances similar to those that the RIDOC had previously sought; that the DOJ was would review the information, if there was an issue the DOJ would explain the findings to the RIDOC, and they would work it out with them, and then move on. In that spirit of a cooperative effort, the RIDOC provided open and honest communication and disclosure of information to the DOJ

3

with an understanding that the parties would work together to improve the process and address identified issues of unintentional discrimination. At no time during the DOJ's information review up to the filing of suit—which spanned four years—did the DOJ inform the RIDOC of any issues it uncovered in reviewing more than a decade's worth of materials. All this time the RIDOC continued to recruit, test, train and hire Correctional Officers without objection from the DOJ; a period of time for which the DOJ now alleges liability and seeks substantial damages.

These circumstances and representations are at the very core the State's affirmative defenses of laches and estoppel, and support the RIDOC's entitlement to information that the DOJ possesses and claims is privileged. The State seeks only the facts that attend the DOJ investigations; facts that would support the laches and estoppel defenses. State Defendants need to show what the DOJ as investigators knew, when they knew it, and what they did with the information. The information sought is not legal work product—it is the information gathered by the investigators during the four-year investigation, which cannot be obtained elsewhere.

Information as to when the DOJ knew certain information is not simply confined to the documents that have already been disclosed,[1] and instead may now fall under what the DOJ is claiming to be part of a "privileged" process. For example, the DOJ states that the "United States first sought information about the disparate impact of the exams… ." DOJ Memo in Opposition to Defendants' Motion to Compel, Doc. 56, p. 4. The State Defendants are entitled to know when the DOJ conducted its disparate impact analysis and the results of that analysis in order to ascertain when the DOJ had information that there was an issue. That information would have enabled RIDOC to address the process and take affirmative steps to mitigate the

---

[1] Of note, as the DOJ acknowledges, in discovery the State Defendants have essentially been handed back information that the State Defendants originally provided to the DOJ. This may be why the DOJ believes that the RIDOC already has information in hand to establish unreasonable delay and prejudice.

alleged liability for which the DOJ now seeks substantial damages.  In a disparate impact case that is purportedly based on "statistics," the point at which the DOJ ran that analysis and determined there was an issue is relevant and important to the State Defendants' affirmative defenses.  State Defendants contend that such information is of a factual nature and not covered by the privileges asserted by the DOJ.  *See Hickman v. Taylor*, 329 U.S. 495, 511 (1947) ("Where relevant and non-privileged facts remain hidden in an attorney's file and where production of those facts is essential to the preparation of one's case, discovery may be properly had.").

As this Honorable Court is aware, the equitable defense of laches is well-established; it requires a showing of unreasonable delay and that the delay created prejudice to the party asserting the defense.  *See Iglesias v. Mut. Life Ins. Co. of New York*, 156 F.3d 237, 243 (1st Cir. 1998) (*quoting K-Mart Corp. v. Oriental Plaza, Inc.*, 875 F.2d 907, 911 (1st Cir. 1989)).  The elements of estoppel are similarly well-established: the party seeking to assert estoppel must show that the party to be estopped made a definite misrepresentation of fact to another person having reason to believe that person would rely on it, the party seeking estoppel relied on that misrepresentation to his/her detriment, and the reliance on the misrepresentation was reasonable. *See Ramirez-Carol v. United States*, 496 F.3d 41, 49 (1st Cir. 2007) (*quoting Heckler v. Community Health Services*, 467 U.S. 51, 59 (1984) (internal citations omitted)).

The information sought in the topics of the 30(b)(6) are crafted to flesh out the information needed to thoroughly present these arguments to the Court in an effective and efficient manner.  The DOJ contends that State Defendants already have the information to demonstrate prejudice.  DOJ's unilateral determination that the State has enough information should not carry the day.  The only way the State Defendants can obtain the factual basis related

5

to the DOJ's delay in bringing suit is if the DOJ provides evidence as to what information it knew and when; information that is not within Defendants' grasp, but solely in the possession of the DOJ.  Merely relying on the already discovered emails, letters, and documents is helpful to determine when the DOJ sought or received certain information, but State Defendants have no way to know or determine what the DOJ did with the information, what the DOJ was looking for in that information, the factual results of any analyses conducted by the DOJ, or when the DOJ knew that there was any sort of issue with the RIDOC's processes.    Particularly in light of representations that the DOJ would discuss and work out any issues with the RIDOC.

As the affirmative defenses of laches and estoppel  are reliant on determining when the DOJ knew there was an issue, and there is no other place to obtain this information, State Defendants are entitled to know these facts.  *See DSM Desotech Inc. v. 3D Sys. Corp.*, No. 08 C 1531, 2011 WL 117048, at *6 (N.D. Ill. Jan. 12, 2011) (allowing party to discover information pertinent to laches and estoppel defenses despite work product doctrine because the information sought was a "purely factual inquiry which does not seek to elicit privileged material or reveal the thought process of the attorneys involved. Factual material underlying attorney thoughts, ideas, recommendations, opinions, and advice is generally not privileged.").[2]

The DOJ cites to several E.E.O.C. cases to support their contention that "such inquiries into counsel's marshaling of facts are an improper effort to delve into the work product of government counsel."   DOJ Memo in Opposition, Doc. 56, p. 11.   These cases are distinguishable from the facts at hand.  As an initial matter, no affirmative defense of laches is at

---

[2] State Defendants have also sought the documents that the DOJ relies on for this type of testimony and information because it is entitled to non-privileged relevant information, and presumably that information would have already been produced.  To the extent that documents the DOJ contends are privileged contain the factual information sought in State Defendants' 30(b)(6) Notice, State Defendants are entitled to know if they have been relied on for testimony.

issue in the E.E.O.C. cases cited by the United States.  Here the United States seeks to hold the RIDOC liable for the selection processes conducted back to 2000, and seeks to recover damages from 2007 to the present as they have successfully argued no statute of limitations applies. Second, the cases relied upon involve the  E.E.O.C., which, unlike the DOJ, has built in time frames and limitation periods within which it must operate.  Had an individual complaint been brought, or had the RIDOC been a private or federal employer under a pattern or practice investigation, the investigators and E.E.O.C. would have been bound both by a statute of limitations and by the strictures of Title VII—protections and procedures not afforded to State and local employers.  The need for information about affirmative defenses of laches and estoppel is not present in a case with such procedural safeguards.  Moreover, these cases are further distinguishable in that the E.E.O.C.'s investigatory file had been turned over in discovery. *See E.E.O.C. v. Texas Roadhouse, Inc.*, No. CIV.A. 11-11732-DJC, 2014 WL 4471521, at *5 (D.Mass. Sept. 9, 2014) ("defendants are already in possession of all non-privileged portions of the administrative  file, including notes of all witness interviews as well as documentary evidence collected during its investigation"); *E.E.O.C. v. JBS USA, LLC*, No. 8:10CV318, 2012 WL 169981, at *4 (D.Neb. Jan. 19, 2012); *E.E.O.C. v. McCormick & Schmick's Seafood Restaurants, Inc.*, 2010 WL 2572809, at *6 (D.Md. June 22, 2010) ("EEOC has produced its investigative file"); *E.E.O.C. v. HBE Corp.*, 157 F.R.D. 465, 466-67 (E.D.Mo. 1994) (noting that plaintiff turned over its complete investigative file).  In the present litigation, despite extensive discovery requests, the documents and information the DOJ has provided are largely those that the State either already had or gave to the DOJ in the first instance.  The State has been continually told that the relevant information is the contained in the State's documents, and that any other information in the possession of the DOJ is privileged.  There is more to the State's

7

defenses than what it produced to the United States.

It is of no moment that the DOJ believes that the State has no likelihood of success in regard to its affirmative defenses. Simply put, State Defendants have the right to defend themselves in this action and have the right to seek to mitigate the damages that the DOJ now seeks for selection devices that were used multiple times while the RIDOC was under the close scrutiny of the DOJ. The DOJ is in possession of facts relevant to those defenses and should, like any other litigant, be required to disclose those facts. The DOJ's withholding of factual information necessary to the State's affirmative defenses will result in undue hardship.

Despite the DOJ's assertions to the contrary, the harm and prejudice caused by unreasonable delay in this case manifests in multiple ways. During discovery it became increasingly obvious that much of the information sought could not be found or recalled due to the age of the information requested by the DOJ. For example, although this is a case purportedly based on unintentional effects of a process, the DOJ has sought to discover why certain steps were taken by the RIDOC, why devices or methods of use were selected, what the RIDOC or its processes were "intended" to do. For instance, testimony by RIDOC deponents, as well as by test vendors, demonstrates the evidentiary prejudice of DOJ's delay in beginning its investigation and in bringing suit. RIDOC's former Assistant Director Ellen Evans Alexander, when asked about any recollection of particular conversations with Jeanneret (one of the RIDOC's test developers from the late 1990s) about how to choose a cut score on the examination (an exam which the RIDOC ceased using in 2004), stated "I don't at this time. You know, it's over 15 years ago and I do not." Ms. Alexander, Dep. p. 23:6-11. In addition, one exam developer indicated that the material the DOJ sought was greater than 20 years old and may not exist or be readily accessible. The loss of evidence, faded memories, and degraded

evidence is palpable throughout testimony provided.

Prejudice is further demonstrated by the fact that should the State be unable to adequately discern the facts supporting its laches defense, it is facing potentially substantial damages—including the not one, but two recruitment and selection processes that occurred during the pendency of the investigation. In fact, in 2013, the DOJ provided the RIDOC with its first indication that there may be an issue with the selection process when it sent a Notice of Suit letter just weeks after the RIDOC completed the testing process utilizing the now-challenged selection devices. The 2013 testing process is also now included in the suit, creating additional liability for the State. With the prospect of the State of Rhode Island's citizens being unfairly exposed to over a decade of liability and to substantial damages, the prejudice to the State under these circumstances and the need for the evidence sought is clear and substantial.

The DOJ agrees that the asserted privileges are not absolute, but are qualified, and that they may be overcome upon a sufficient showing of substantial need by the State. Though seeking only the factual information, State Defendants have satisfied that burden—it has explained why the information is necessary below each matter in Section IV of its Memorandum in Support of Motion to Compel 30(b)(6) Testimony (Doc. 55-1) and in this reply. The information sought—which can only be obtained from the DOJ—has a direct bearing on the State Defendants' affirmative defenses, its ability to mitigate damages, and are essential to defending this action.

For the reasons stated in its Motion to Compel, herein, and those to be advanced at argument, State Defendants respectfully request that this Honorable Court grant the Motion to Compel certain 30(b)(6) testimony of the DOJ.

9

Respectfully submitted:

STATE OF RHODE ISLAND, and
RHODE ISLAND DEPARTMENT
OF CORRECTIONS

By Its Attorney,
PETER F. KILMARTIN
ATTORNEY GENERAL

*/s/ Ariele Yaffee*

_____

Neil F.X. Kelly (Bar No. 4515)
Assistant Attorney General
Ariele Yaffee (Bar No. 8646)
Mariana Ormonde (Bar No. 8873)
Special Assistant Attorneys General
150 South Main Street
Providence, Rhode Island, 02903
Tel: (401) 274-4400 ext. 2284
Fax: (401) 222-3016
nkelly@riag.ri.gov

**CERTIFICATION**

I, the undersigned, hereby certify that I filed the within document via the ECF filing system and that a copy is available for viewing and downloading. I have also caused a copy to be sent via the ECF system to the following attorneys of record on this 22nd day of February 2016:

Clare Geller
Elizabeth B. Banaszak
David Reese
United States Department of Justice
Employment Litigation Civil Rights Division
950 Pennsylvania Avenue, NW, PHB
Washington, DC 20530

_____/s/ Ann Brown_____