**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| *Plaintiff*, | : | |
| | : | |
| v. | : | |
| | : | C.A. 14-78S |
| STATE OF RHODE ISLAND, | : | |
| RHODE ISLAND DEPARTMENT OF | : | |
| CORRECTIONS, | : | |
| *Defendants*. | : | |

**STATE DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF ITS
OBJECTION TO MAGISTRATE'S ORDER DENYING IN PART
STATE'S MOTION TO COMPEL 30(b)(6) DEPOSITION TESTIMONY
FROM THE PLAINTIFF UNITED STATES**

Now come the State Defendants and, pursuant to Federal Rule of Civil Procedure 72 and Local Rule 72, hereby Object to the portion of Magistrate Judge Almond's Text Order which denied in part State Defendants' Motion to Compel Rule 30(b)(6) deposition testimony of the Plaintiff, the United States Department of Justice (hereinafter "DOJ"), regarding Matter 5 of State Defendants' Amended Notice of Deposition.[1]  For the reasons stated herein, State Defendants respectfully request that this Honorable Court set aside the Magistrate's decision on Matter 5 and

---

[1] Magistrate Judge Almond precluded deposition testimony on Matter 5 in its entirety as contained in State Defendants' Amended Notice of Deposition and which is included herein for ease of reference:

**MATTER 5:**    The method of calculation by which the DOJ evaluated the RIDOC's employment and selection procedures, including, but not limited to:
a. Identifying the steps taken and person(s) involved in establishing any statistical analysis;
b. The factual basis for any statistical calculations;
c. The methodology employed to produce any statistical calculations;
d. The dates that any statistical analysis was conducted;
e. The factual basis for each and every statistical allegation contained in DOJ's complaint.

enter an Order that the DOJ designate a witness to testify as to the evidence sought in that Matter, which State Defendants require for their affirmative defenses.

## I.   INTRODUCTION AND BACKGROUND

Following an impasse between the parties as to matters sought by State Defendants in a Rule 30(b)(6) deposition of the DOJ, State Defendants' filed a Motion to Compel on February 10, 2016 seeking to obtain from the DOJ the facts surrounding the investigations of the Rhode Island Department of Corrections ("RIDOC") to support the affirmative defenses of laches and estoppel. The District Court has recognized that laches applies in this action.[2]   After receiving memoranda on the issue from both parties, Magistrate Almond held a telephonic conference on February 23, 2016.[3]   The Magistrate provided an expedited ruling granting in part and denying in part State Defendants' Motion to Compel.   *See* Exhibit A, Text Order, Entered February 24, 2016.   The Magistrate granted the motion with respect to the Amended Notice Topics 1, 2, 3, 4, 6, 7, and 8, and denied the motion on topics 5, 9, and 10.   Additionally, the Magistrate's Order stated "the deponent(s) may not be asked any questions regarding experts and their opinions that will be the subject of later disclosure pursuant to Rule 26(a)(2)(B) or are protected from disclosure under Rule 26(b)(4)(D)."   After receipt of the expedited Order, the parties proceeded to hold the scheduled

---

[2] In the Memorandum and Order issued January 29, 2015, in denying the State's Motion to Dismiss based on statute of limitations grounds, this Honorable Court noted that, "when the DOC submits its Answer to the Complaint, the DOC could raise laches as a defense in an attempt to further limit damages." Doc. 22, p. 17.  In addition to asserting this affirmative defense, the State Defendants continue to maintain that a limitations period must be applicable in accordance with due process protections in a Title VII action, which are statutorily provided to federal and private employers while state and local government employers receive virtually none.

[3] *See* State Defendants' Motion to Compel (Doc. 55) and Memorandum in Support with exhibits (Docs. 55-1 through 55-6), Plaintiff's Response in Opposition and supporting exhibit (Docs. 56 and 56-1), and the State Defendants' Reply and accompanying exhibit (Docs. 57 and 57-1).  The Transcript for the Telephonic Conference held on February 23, 2016 has been ordered as of March 4, 2016.

deposition on March 3, 2016.  State Defendants were unable to elicit certain testimony related to their affirmative defenses and have as a result filed this Objection to Matter 5.  State Defendants also intend to file a separate Motion to Compel related to privileges asserted during the deposition.

### A.  Affirmative Defenses

State Defendants seek to press the affirmative defenses of laches and estoppel based on the DOJ's representations made to the State Defendants, its subsequent investigations, and failure to bring the suit within a reasonable time and outside Title VII's general purpose of eradicating discrimination swiftly and efficiently—prejudicing the RIDOC.  The State Defendants' affirmative defense of laches arises out of the length of time that the DOJ conducted its 2009-2013 investigation, the period of time for which it sought information, and when the DOJ knew or should have known that there was any issue with the RIDOC's employment selection practices.  Intertwined with the laches defense is State Defendants' affirmative defense of estoppel based upon the DOJ's representations in an October 2009 meeting that if an issue was found with the process, the DOJ would discuss it with RIDOC, get RIDOC input, and the parties would work it out together.

Based on this representation by the DOJ, RIDOC provided extensive information between 2009-2013 about nearly all aspects of the recruitment and selection process for correctional officers at the Department back to 2000 and earlier, and continued to provide information about the process—while the RIDOC held two more recruitment processes.  At no time was the RIDOC ever alerted to any specific issue with the process—of disparate impact, validity, or otherwise—the DOJ never informed the RIDOC that there was any issue that they should discuss, never provided any indication that there was any issue that they should work out, and there was no indication to the RIDOC that the DOJ was specifically targeting any particular portion of the process or the process in total.  The RIDOC only learned that there was any issue with their process in November

3

of 2013 upon receipt of a Notice of Authorization of Suit Letter from the DOJ.  Nonetheless, the DOJ filed suit, and now seeks damages not only for the tests administered since 2000, but also for the two separate recruitment and selection processes that occurred during the four-year period of DOJ's investigation.  *See also* Doc. 55-1, State Defendants' Memorandum of Law in Support of Motion to Compel 30(b)(6) Testimony of DOJ.

The State Defendants' Motion to Compel sought the ability to acquire information concerning the steps taken by the DOJ in the process of the 2009-2013 investigation and the prior 1993-1996 investigation, and as to when the DOJ calculated or understood certain information and what they did or did not do with it, in order for State Defendants to effectively put their equitable defenses forward.

### B.  March 3, 2016 Deposition of DOJ Designee

At the deposition, State Defendants were unable to obtain the information needed to support its laches defense.  The DOJ asserted privilege over the information sought – most particularly information under Matter 4 surrounding the date(s) that the DOJ, or its agents, consultants, or representatives conducted any adverse impact or standard deviation statistical analysis(es) of any RIDOC selection process.  DOJ's designee, Meredith Burrell, testified that she prepared for the deposition by speaking with counsel and by reviewing correspondence between the DOJ and the RIDOC.   Ms. Burrell testified that it was her understanding that she was designated to testify only regarding correspondence exchanged between the DOJ and RIDOC, and not more broadly into the substance or internal steps of the Matters contained in the Amended Notice of 30(b)(6) Deposition.

In her testimony on Matter 4, the steps that were taken in the DOJ's 2009-2013 investigation of RIDOC, Ms. Burrell revealed that between April 2010 and through 2013 that the DOJ had on staff a statistician by the name of Dr. Jennifer Crane.  When asked when Dr. Crane

conducted analysis(es) of the information provided by the RIDOC, Ms. Burrell testified that Dr. Crane ran approximately a dozen analyses during the period between May 2010 and July 2013. Following her counsel's instruction not to answer based on assertions of privilege, Ms. Burrell would not indicate specifically what analyses were conducted nor would she provide information as to specific dates upon which those analyses were conducted. Additionally, Ms. Burrell would not testify as to when the DOJ received or learned of the results of the analyses performed by Dr. Crane, or what information provided by the RIDOC was used to conduct those analyses.

Additionally, Ms. Burrell testified that the RIDOC provided the DOJ with responses to requests for information regarding test administrations and classes run between 2000-2009 in 2009 and early 2010. Included in such responses—provided by the RIDOC as expeditiously as possible within short time periods—were applicant flow information, demographic break downs of applicants and events in the selection process, score information, test development information, affirmative action plans, as well as contact information for the video examination developer. Although the State believes that the aforementioned information, which was provided to the DOJ by May 2010, was sufficient to conduct a disparate impact analysis at least for test administrations and classes between 2000-2009, Ms. Burrell testified that this "puzzle" of information for the period of 2000-2009 required time to review and understand. Nevertheless, based upon the assertions of privilege, she would not testify as to when such information was in fact analyzed, what next steps were taken, or when the information provided any indication of an issue with the process.

Ms. Burrell also testified that in 2011, prior to providing any information about any issues with the 2000-2009 processes, the DOJ came to learn that the RIDOC had initiated a June 2011 recruitment process, and was provided a timeline for the class to be run during that time period. According to Ms. Burrell's testimony, the DOJ prior to June 2011 was not aware that the RIDOC

5

was running that recruitment process, and she testified that the DOJ did not communicate any concern to the RIDOC once it was learned that they were recruiting and hiring during that time, including the holding of a Training Academy class in early 2012. Ms. Burrell was instructed not to testify as to what facts were known or should have been known to the DOJ at that point regarding the disparate impact or validity of the processes. After learning of the 2011 recruitment process, the DOJ also began requesting information about that recruitment and subsequently added the 2011 recruitment classes in to their analyses and into the instant lawsuit. Similarly, Ms. Burrell further testified that in March 2013 they also became aware of the RIDOC's intention to recruit and select correctional officers in 2013. Ms. Burrell testified that the DOJ and RIDOC held approximately a dozen calls between 2011 and 2013. At no time did the DOJ inform the RIDOC of any issue with their recruitment and selection processes, nor did the DOJ express any concern to RIDOC about holding a recruitment and selection process in 2013. Only after the RIDOC administered the written and video examinations in October and November 2013 did the DOJ inform the RIDOC that they had made "findings" in the investigation on November 25 and 26, 2013. The "findings" presented to the RIDOC in November 2013 was the first time that the RIDOC learned that there was any issue with the selection process; in particular, that the DOJ took issue with the video and written examinations and that there were statistical issues—despite the fact that the RIDOC continued to run a 2011 and 2013 recruitment and selection process.

Under Matter 5, State Defendants are entitled to know the facts that attend to what dates statistician Dr. Crane ran her analyses, the types of analyses that she ran, and the dates when any analysis(es) indicated that there was disparate impact or any other issue with the process in support of the State's laches and estoppel defenses. And although State Defendants intend to seek the information within the scope of Matter 4 through a Motion to Compel, the information that was foreclosed from inquiry under Matter 5 is interconnected to the information sought in Matter 4 and

remains integral to the State Defendants' defenses. The RIDOC was unable to inquire and gather essential information regarding the methods employed, the factual basis for any statistical calculations, the dates that any statistical analysis was conducted, or the steps taken in establishing any statistical analysis as it was foreclosed by the Magistrate's decision denying the State's Motion with regard to Matter 5. That information is crucial to the State Defendants' understanding of what information the DOJ had at given points in the investigation and what the DOJ did with the information throughout the four year investigation. Without such information, the State Defendants' ability to effectively present its defenses is seriously impaired.

## II.    ARGUMENT

### A. The Information Sought Under Matter 5 is Factual in Nature and Necessary and Relevant to the State Defendants' Affirmative Defenses

This Honorable Court, when denying the State's Motion to Dismiss by holding that no statute of limitations applied to the DOJ, indicated that laches was an available affirmative defense for the State to pursue. As this Honorable Court is aware, the equitable defense of laches is well-established; it requires a showing of unreasonable delay and that the delay created prejudice to the party asserting the defense. *See Iglesias v. Mut. Life Ins. Co. of New York*, 156 F.3d 237, 243 (1st Cir. 1998) (*quoting K-Mart Corp. v. Oriental Plaza, Inc.*, 875 F.2d 907, 911 (1st Cir. 1989)).

In assessing the "unreasonable and unexcused delay" of the laches defense, courts consider both the length of the delay and the plaintiff's reasons for the delay. *Whitfield v. Anheuser-Busch, Inc.,* 820 F.2d 243, 245 (8th Cir. 1987). As such, the State Defendants are entitled to know the facts related to when the DOJ conducted its disparate impact analysis(es) or validity analysis(es), what methods were used to assess disparate impact or validity, and the factual results of any such analysis(es) in order to ascertain when the DOJ had information that there was an issue with the RIDOC's procedure or selection process. That information, if provided as represented by the DOJ

7

to the RIDOC, would have allowed the parties to discuss the results and work it out together, enabling the RIDOC to address the process and take affirmative steps to mitigate the alleged liability for which the DOJ now seeks substantial damages.    Such information also will demonstrate any delay that occurred in the process that worked to prejudice the RIDOC.    In a disparate impact case that is purportedly based on "statistics," the point at which the DOJ ran that analysis and determined there was an issue is relevant and essential to the State Defendants' affirmative defenses.    Despite the DOJ's assertions to the contrary, the State Defendants cannot present an informed and effective affirmative defense of laches to this Court by simply relying on the dates that the information was provided to the DOJ by the RIDOC; particularly after being foreclosed from obtaining information covered under Matter 5.

While mere dates of when RIDOC provided information to DOJ may assist the laches defense in light of arguing that the DOJ should have had sufficient information from RIDOC to conduct an analysis of validity, disparate impact, or statistical significance, such dates fail to demonstrate when any DOJ analysis in fact informed them that there was any issue with any part of the process.    Dates of communications between the DOJ and RIDOC further fail to reflect whether or not the DOJ was diligently conducting its investigation.

State Defendants have been unable to gain any facts or information pertaining to when the DOJ knew or should have known that there was a statistical disparity, disparate impact, lack of validity, or any other issue with the RIDOC's employment and selection processes or what methods of calculation or analysis were employed.    State Defendants have also been unable to secure any information as to what internal steps the DOJ was taking with its investigation.    State Defendants contend that such information is of a factual nature and not covered by the privileges asserted by the DOJ.    *See Hickman v. Taylor*, 329 U.S. 495, 511 (1947) ("Where relevant and non-

8

privileged facts remain hidden in an attorney's file and where production of those facts is essential to the preparation of one's case, discovery may be properly had.").

Matter 5 is critical in determining facts in relation to the affirmative defense of laches. The date(s) in time when the DOJ ran each analysis and discovered that there was any disparate impact, standard deviation, statistical disparity, or lack of validity in relation to any part of the selection process and/or to any demographic group is paramount to State Defendants' laches defense.[4]   The method of calculation and factual information that serve as the bases for these analyses are also required to understand what information provided by the RIDOC was used to conduct the calculations, enabling the State Defendants to determine whether it had provided sufficient information at any given point in time to run those calculations.  Learning the factual bases of what the DOJ relied on to determine if there was any issue with the process is more than just the dates on which the RIDOC provided information.

Contrary to the Magistrate's ruling and the DOJ's objections and assertions of privilege, State Defendants do not believe that they are seeking information that will be disclosed in expert discovery.   Rather, State Defendants are seeking to obtain information regarding the facts surrounding the in-house statistician's analysis, when the DOJ knew the results of any disparate impact analysis or validity analysis, what factual information was possessed by the DOJ at each point in the process, and what steps the DOJ was taking to diligently conclude its investigation to the extent that such information will not be disclosed in expert discovery.  For these reasons, State Defendants now narrowly object to the Magistrate's decision as it is related to Matter 5 and expert discovery in an effort to obtain the information needed to effectively support the State Defendants'

---

[4] The information sought under Matter 5 is also necessary and relevant for State Defendants' estoppel defense in that once the State understands when the DOJ knew or should have known of any issue with the selection processes, the DOJ should have then raised that issue with the RIDOC, discussed it, and worked it out with the RIDOC according to the representations DOJ made to the RIDOC.

affirmative defense of laches.

**B. The Privileges Asserted Are Qualified And Are Outweighed by State Defendants' Need for Information**

As argued in the Motion to Compel (Doc. 55-1, Memo. in Support of Motion to Compel), State Defendants are left without any further means to obtain necessary information pertinent to its affirmative defenses and a substantial need exists to obtain the information known and possessed by the DOJ.  Though State Defendants maintain that the information sought is of a factual nature and not covered by privilege, to the extent the Court determines that the privileges asserted by the DOJ are applicable, State Defendants' substantial need outweighs the qualified privileges asserted by the DOJ—without such information, State Defendants will face significant prejudice and an inability to support its affirmative defenses.[5]

As recognized by the DOJ, the privileges they have asserted (governmental deliberative process, law enforcement/investigatory process privilege, work product doctrine) are qualified and can be overcome by the demonstration of State Defendants' need for the information.  *See*

---

[5] The DOJ's response to Matter 5 provided by letter on January 20, 2016 stated:

"The United States will not designate a witness to testify regarding Matter 5.  This matter improperly seeks an expert opinion. Furthermore, any review or analysis conducted or determination reached by DOJ attorneys, DOJ personnel working under the direction of its attorneys, or non-testifying consultants retained by DOJ is subject to the investigative process privilege, work product privilege, and/or is protected from disclosure by Rule 26(b)(4)(D).  The analyses that the United States is relying on in this litigation to establish the disparate impact of the challenged selection procedures are the analyses conducted by our testifying expert. We anticipate that Rhode Island will have received much of the information it may be seeking from our testifying expert in his report prior to the Rule 30(b)(6) deposition date and will have the opportunity to depose him regarding his methodology and findings at his expert deposition."

*generally* Doc. 55-1, State Defendants' Memo. in Support of Motion to Compel; *Williams v. City of Boston*, 213 F.R.D. 99, 100 (D. Mass. 2003) (*quoting Gomez v. City of Nashua,* 126 F.R.D. 432, 434 (D.N.H.1989)) (noting that deliberative process privilege is qualified and not absolute, and that courts must balance conflicting interests on case-by-case basis); *In re Sealed Case*, 121 F.3d 729, 737 (D.C. Cir. 1997) (indicating that the deliberative process privilege is qualified and "can be overcome by a sufficient showing of need"); *Dellwood Farms, Inc. v. Cargill, Inc.,* 128 F.3d 1122, 1124 (7th Cir. 1997) (*citing Tuite v. Henry*, 98 F.3d 1411, 1417-18 (D.C.Cir. 1996)) (stating that law enforcement/investigatory process privileges are not absolute and can be overridden in appropriate cases by the need for the privileged materials); *In re Sealed Case*, 856 F.2d 268, 273 (D.C. Cir. 1988) (noting that the work product doctrine is also qualified and evidence can be compelled if the litigant seeking the information can make out a "sufficient showing of necessity for the information and its unavailability by other means.").

State Defendants have a substantial, compelling, and particularized need for information held solely by DOJ in order to support its affirmative defenses, which outweighs the privileges asserted. The State Defendants need to obtain necessary evidence from the DOJ within the scope of Matter 5 related to the steps taken and methodology used during the 2009-2013 investigation to determine whether or not there was any issue with the selection process statistics or selection device validity and to determine the DOJ's diligence in conducting its investigation in order to support its defenses of laches and estoppel. State Defendants are not seeking to disclose confidential sources, investigatory strategies, or advisory opinions—simply the facts as to what was used, what steps were taken, when, and when the DOJ knew there could have been an issue with the process.

Any factual information or evidence about the steps taken by the DOJ under Matter 5 are solely within the DOJ's possession or knowledge; State Defendants' have no other way to obtain

this information, which is highly necessary to defend this case. In a case of unintentional disparate impact, where the DOJ sought and RIDOC agreed to cooperate to work out any issues that the DOJ identified to improve the process for all applicants, but where the DOJ never informed the RIDOC of any issues prior to the Notice of Intent to File Suit letter in November 2013 (despite RIDOC's efforts to comply with numerous requests for information, and while the RIDOC held two administrations of the testing procedures now in issue), the State Defendants have a heightened need for the evidence held solely by the DOJ surrounding the methods and analysis(es) conducted by Dr. Crane or others who will not be disclosed during expert discovery, as well as the materials relied on to conduct those analyses, to determine whether or not the selection process was found to have any issue at any period in time.

Further, the DOJ and Magistrate Judge Almond's ruling indicate that information is protected by Rule 26(b)(4)(D), regarding facts and opinions held by an expert employed strictly for trial preparation. Regardless, this rule may be overcome and a party may discover such facts and opinions on "showing exceptional circumstances under which it is impracticable for the party to obtain facts or opinions on the same subject by other means." Fed.R.Civ.P. 26(b)(4)(D)(ii). The DOJ is the only entity that knows what occurred during the investigation and should be required to disclose the facts surrounding the investigation given the circumstances here to prevent prejudice to the State. Accordingly, the State Defendants request that this Honorable Court reverse the Magistrate Judge's Order with respect to Matter 5 and compel the DOJ to designate a witness to testify as to the information requested in Matter 5.

### III.    CONCLUSION

For the reasons set forth herein, State Defendants respectfully request that this Honorable Court set aside the Magistrate's decision on Matter 5 and enter an Order that the DOJ designate a witness to testify as to the evidence sought in that Matter, which State Defendants require for their

affirmative defenses.

Respectfully submitted:

STATE OF RHODE ISLAND, and
RHODE ISLAND DEPARTMENT
OF CORRECTIONS

By Its Attorney,
PETER F. KILMARTIN
ATTORNEY GENERAL

*/s/ Neil F. X. Kelly*

_____

Neil F.X. Kelly (Bar No. 4515)
Assistant Attorney General
Ariele Yaffee (Bar No. 8646)
Mariana Ormonde (Bar No. 8873)
Special Assistant Attorneys General
150 South Main Street
Providence, Rhode Island, 02903
Tel: (401) 274-4400 ext. 2284
Fax: (401) 222-3016
nkelly@riag.ri.gov

## CERTIFICATION

I, the undersigned, hereby certify that I filed the within document via the ECF filing system and that a copy is available for viewing and downloading. I have also caused a copy to be sent via the ECF system to the following attorneys of record on this 8th day of March 2016:

Clare Geller
Elizabeth B. Banaszak
David Reese
United States Department of Justice
Employment Litigation Civil Rights Division
950 Pennsylvania Avenue, NW, PHB
Washington, DC 20530

*/s/ Ann Brown*

_____

14