UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>        v.<br><br>STATE OF RHODE ISLAND,<br>RHODE ISLAND DEPARTMENT OF<br>CORRECTIONS,<br><br>        Defendants. | Civil Action No.: 1:14-cv-78(S) |

**PLAINTIFF UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANTS'
OBJECTION TO MAGISTRATE'S ORDER DENYING IN PART DEFENDANTS'
MOTION TO COMPEL RULE 30(b)(6) TESTIMONY**

Plaintiff United States of America ("United States") submits this Opposition to

Defendants State of Rhode Island and Rhode Island Department of Corrections' (collectively,

"Defendants") Objection to Magistrate Judge Almond's Order Denying in Part Defendants'

Motion to Compel privileged testimony at the Rule 30(b)(6) deposition of the United States, Dkt.

60. For the reasons set forth below, Magistrate Judge Almond's order should be affirmed.

**I.      STATEMENT OF THE ISSUES AND SUMMARY OF ARGUMENT**

Defendants have moved the Court to overturn a discovery ruling made by Magistrate

Judge Almond. Defendants bring the instant motion pursuant to Federal Rule of Civil Procedure

72(a), which requires a finding that Judge Almond's ruling was clearly erroneous or contrary to

law. Defendants narrowly object to Judge Almond's ruling, appealing only his refusal to compel

the United States to produce a designee for Matter 5 of Defendants' Notice of Rule 30(b)(6)

Deposition. Defendants ask the Court to overturn Judge Almond's ruling and to compel the

United States to put forward a Rule 30(b)(6) designee to testify about privileged statistical

analyses conducted by Department of Justice attorneys, agents of the attorneys, or experts

retained by those attorneys, during the United States' pre-litigation investigation of RIDOC.

As was fully briefed for Judge Almond, such information is firmly protected from

disclosure by Federal Rule of Civil Procedure 26(b)(4)(C)&(D), which protects communications

with both testifying and non-testifying experts, and is also safeguarded by the attorney work

product and investigatory file/process privileges.  The United States' arguments were amply

supported by relevant and compelling case law.  The earlier briefing demonstrated that

Defendants did not and cannot make the showing necessary to justify casting aside these

important privileges of the United States.

Defendants have failed to acknowledge that the applicable legal standard for the instant

motion requires the moving party to show why a magistrate's order is clearly erroneous or

contrary to law.  Further, this standard of review limits the record upon appeal to what the

magistrate considered and does not allow for the introduction of new arguments or evidence.

Defendants point to no clear error by Judge Almond and have done nothing to prove that they

have met this high bar.  Instead they venture well beyond the record available to Judge Almond,

basing their arguments in the instant motion entirely on new evidence obtained during the

subsequent Rule 30(b)(6) deposition of the United States, but end up in the same place.  Their

improper reliance on new evidence only further underscores their failure to establish exceptional

circumstances or substantial need.

Finally, even if the Court were to grant their motion and order the United States to

produce a designee for Matter 5, such an order would have little practical effect because

Defendants did not object to the separate portion of Judge Almond's order that bars all

questioning regarding any experts retained by the United States.  For all of these reasons, Judge

Almond's ruling should be affirmed.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    Defendants' Motion to Compel

Defendants served a Notice of Rule 30(b)(6) Deposition on the United States seeking to

depose a representative of the United States on ten general subject matter areas ("Matters").  Dkt.

55-2.  The United States agreed to designate a witness to testify regarding any non-privileged

information responsive to seven of the Matters.  The United States refused to designate a witness

to testify concerning Matters 5, 9, and 10, on grounds that these matters, on their face, were

directed solely at privileged information, such that any non-privileged testimony would be

impossible.  Dkt. 55-3.  The United States further asserted that Matters 5 and 10 improperly

sought expert testimony.  *Id*.  The United States also asserted a number of privileges to portions

of the remaining seven Matters, including attorney-client privilege, work product privilege,

deliberative process privilege, investigatory privilege, and the protection of the work of testifying

and non-testifying experts under Rule 26.  *Id*.  Without attempting to obtain any deposition

testimony from the United States, Defendants moved the Court for a ruling that the United States

could not assert its privileges during the deposition and to compel the United States to produce a

witness for the three contested Matters.  Dkt. 55.

Defendants' Motion to Compel was fully briefed: Defendants submitted a 24-page brief,

answered in turn by the United States' 23-page response, and followed by Defendants' 10-page

reply, plus numerous exhibits.  All told, the parties submitted more than 100 pages of filings on

the issue.  Dkts. 55, 56, 57.  Of note, the United States' response was accompanied by a

Declaration by Principal Deputy Assistant Attorney General Vanita Gupta, the head of DOJ's

Civil Rights Division, formally asserting the deliberative process and investigatory process privileges on behalf of the Department of Justice with regard to several of the Matters.  Dkt. 56-1.  Principal Deputy AAG Gupta asserted the investigatory process privilege over Matter 5 in that declaration.  *Id*. at 2-3.

Judge Almond held a telephonic hearing on the motion on February 23, 2016.  He asked Defendants to articulate their laches defense, probed the basic relevance of the information sought by Defendants to the affirmative defenses they are asserting, and sought to understand what "facts" Defendants believed the United States was refusing to provide.  *See* Exh. A, Transcript of Telephonic Hearing, pp. 3-9.  Judge Almond requested that the Defendants explain what actions the court could take "based on general notice descriptions, as opposed to particularized questions and objections"—to which the Defendants responded with conclusory assertions that "the State believes there's factual information contained under each of these topics that is relevant and pertinent to [their] defenses." *Id.* at 7-8.  In an attempt to elicit a more specific description of the sorts of information Defendants hoped to gather, Judge Almond squarely asked Defendants if they intended to inquire about "[w]hether [the DOJ] had made any internal finding that there was a disparate impact but never told [the State]."  *Id.* at 9.  Defendants admitted that they sought this plainly privileged information concerning the internal investigative and deliberative processes of the Department.  *Id.*

The United States explained the importance and applicability of the asserted privileges to the information sought by Defendants, including Matter 5, noting how the "fact results of any analyses conducted by the DOJ" necessarily implicates the work product privilege.  *Id.* at 13.  The United States further explained that any inquiry into "the internal conversations . . . [counsel for the United States] might have had with our agents or litigation consultants" directly

implicates the deliberative process privilege, and that such information deserves protection so that "an agency like ours can have a candid, straightforward decision-making process." *Id.* at 14. At the conclusion of the hearing, Judge Almond took the issue under advisement. *Id.* at 17.

           B.        Magistrate Judge Almond's Ruling

Judge Almond ruled on Defendants' Motion to Compel on February 24, 2016.  In a text order, Judge Almond ordered that the deposition would proceed with respect to the seven Matters for which the United States had not objected to designating a witness.  *See* Exh. B, Magistrate Judge Almond's Text Order, Feb. 24, 2016.  Judge Almond specified that all questioning would be subject to any good-faith assertions of privilege made by the United States and that such assertions should be documented on the transcript for later review.  *Id*.  Judge Almond denied Defendants' motion to compel the United States to designate a witness for the remaining three Matters.  *Id*.  This included Matter 5, which sought information regarding any internal statistical analyses conducted by DOJ attorneys, agents of the attorneys, or DOJ experts during DOJ's pre-suit investigation.  *Id*.  Judge Almond further ordered Defendants not to ask the United States' designee any questions regarding the United States' testifying experts, nor any questions seeking information about the United States' non-testifying experts that is protected from disclosure by Rule 26(b)(4)(D).  *Id*.

           C.        Defendants' Rule 30(b)(6) Deposition of the United States

Under the "clearly erroneous" or "contrary to law" standard at issue in the instant motion, it is inappropriate for Defendants to present new evidence that was unavailable to Judge Almond in making his ruling.  *See* Section III, *infra*.  Yet, Defendants' motion discusses at length the Rule 30(b)(6) deposition that followed Judge Almond's ruling, and improperly puts forth the testimony of the United States' designee as the basis for reconsideration.  Defendants do not cite

to the deposition transcript, nor any other evidentiary support, and their motion repeatedly mischaracterizes the testimony of the United States' designee.  Therefore, while Defendants' evidence is not appropriate under the relevant standard of review, the United States finds it necessary to set the record straight.

Following Judge Almond's order, the parties went forward with the Rule 30(b)(6) deposition of the United States on March 3, 2016.  Deputy Chief Meredith Burrell testified as the United States' designee.  *See* Exh. C, Portions of the Transcript from the Rule 30(b)(6) Deposition of the United States ("Rule 30(b)(6) Deposition"), p. 6.  Contrary to Defendants' insinuation, *see* Dkt. 60-1 at 4, counsel for the United States went through significant effort to obtain information responsive to Defendant's deposition notice and to prepare Ms. Burrell to testify.  Among other efforts, the United States searched the Employment Litigation Section ("ELS") file rooms for paper documents, requested and received records from the Federal Records archives, searched contracts management and payment databases, searched the electronic files of all current ELS employees, searched the electronic files of relevant former employees, spoke to current ELS employees, interviewed eight former employees, and attempted to reach three additional former employees.  *See* Exh. C Rule 30(b)(6) Deposition, pp. 13-16, 240-243.  Ms. Burrell's preparation also drew heavily upon the personal knowledge of Elizabeth Banaszak, the United States' counsel of record in this action, as Ms. Banaszak was one of the attorneys who conducted the pre-litigation investigation.  *Id.* at 193-194, 213-14.

At deposition, Ms. Burrell made clear that she was prepared to testify regarding all non-privileged information available to the United States on the seven Matters for which she was designated.  *Id.* at 9.  Ms. Burrell did *not* state that she was only designated to testify as to the correspondence between the parties, as Defendants allege without any supporting citations.  *Id.* at

10; Dkt. 60-1 at 4. The United States did not seek to impose any time limitation on the deposition and Ms. Burrell testified for over seven hours, at which point Defendants declared that they had exhausted all of their questions. *Id.* at 240. That Defendants struggled to pose questions that did not draw the United States' good-faith privilege objections (beyond reading extensively from correspondence and having Ms. Burrell certify that it had been read correctly) speaks not to any weaknesses in Ms. Burrell's preparation, but to the fact that Defendants were inquiring almost exclusively into privileged matters.

Defendants' motion also seeks to make hay of alleged misrepresentations made by DOJ attorneys during the United States' pre-litigation investigation at an October 2009 meeting between DOJ and RIDOC. Defendants claim that DOJ attorneys promised to advise RIDOC if "any issue" were found during the course of the investigation, and that the parties would then "work it out together," apparently without litigation. *See* Dkt. 60-1 at 3. The United States now understands this allegation to be the cornerstone of Defendants' estoppel and laches affirmative defenses. Those two affirmative defenses have been put forward by Defendants as the sole reason why any of the information sought in the Rule 30(b)(6) deposition of the United States is even arguably relevant to the instant litigation. *Id.*

As Ms. Burrell testified, the United States completely disputes Defendants' characterization of the October 2009 meeting. *See* Rule 30(b)(6) Deposition, pp. 248-249, 273. What the DOJ attorney at that meeting intended to convey, and believes she did in fact convey, was that the United States would conduct its investigation without prejudging that Title VII had been violated; that if a "finding" (*i.e.*, a reasonable cause determination by the Attorney General) was made at the conclusion of the investigation, Defendants would be advised of that finding and the basis for it; and that Defendants would be offered the opportunity to enter into settlement

7

discussions.  *Id.*  DOJ did not tell Defendants at the October 2009 meeting, or at any other time, that settlement could take any form other than the simultaneous entry of a complaint and consent decree.  *Id.* at 150-151, 245-247.  Defendants were amply represented by counsel at the October 2009 meeting and throughout their participation in the United States' investigation.  To the extent that Defendants now claim they did not understand that litigation could result if the Department of Justice investigated Defendants and found Defendants to have violated federal law (an understanding that they never sought to confirm with the United States), Defendants have merely identified a misunderstanding that was not apparent to the United States at that time or at any time during the investigation.

## III.    LEGAL STANDARD

The Federal Rules of Civil Procedure provide that a magistrate judge's order concerning non-dispositive matters may be modified or set aside only upon a showing that the order is "clearly erroneous" or "contrary to law."  Fed. R. Civ. P. 72(a); *see also Rubin v. Smith*, 882 F. Supp. 212, 216 (D.N.H. 1995).  The conclusions drawn by the magistrate judge must be accepted unless the reviewing court "forms a strong, unyielding belief that a mistake has been made." *Phinney v. Wentworth Douglas Hosp.*, 199 F.3d 1, 4 (1st Cir. 1999) (quoting *Cumpiano v. Banco Santander Puerto Rico*, 902 F.2d 148, 152 (1st Cir. 1990)).  In reviewing appeals of magistrate decisions concerning non-dispositive matters, district courts have emphasized that they will not consider new evidence or arguments that were not before the magistrate judge.  *See, e.g., Borden v. Sec'y of Health & Human Servs.*, 836 F.2d 4, 6 (1st Cir. 1987); *Dagans v. Schornback*, 2015 WL 4036211, *1 (S.D. Ill. July 1, 2015); *State Farm Mutual Auto Ins. Co. v. CPT Medical Servs.*, 375 F.Supp.2d 141, 158 (E.D.N.Y. 2005).

Here, Judge Almond's order on a non-dispositive discovery matter can only be set aside if it meets the "clearly erroneous" standard. *See* Fed. R. Civ. P. 72(a). Defendants cannot meet this standard and ignore it entirely in their papers. Instead, Defendants improperly base their appeal almost exclusively on new evidence from the subsequent Rule 30(b)(6) deposition of the United States. *See* Dkt. 60-1 at 4-7. While the United States does not believe that this new information advances Defendants' position in any way, the principle remains that the opportunity to present any argument entitling Defendants to the privileged statistical calculations conducted by DOJ attorneys, their agents, or their experts has passed. *See Borden*, 836 F.2d at 6; *Dagans*, 2015 WL 4036211 at \*1; *State Farm Mutual Auto Ins. Co.*, 375 F.Supp.2d at 158. In briefs and at oral argument, Defendants were afforded a full and fair chance to show "exceptional circumstances" and its "substantial need" for the United States' internal calculations and analyses. Judge Almond, with the support of substantial case law presented in the United States' brief, correctly found that they had failed to do so.

When issuing his order, Judge Almond had at hand the parties' filings. Defendants also had the opportunity to make their arguments during the telephonic hearing. Defendants are not entitled to another bite at the apple by relying on new evidence not considered by the magistrate. *See* Fed.R.Civ.P. 72(a); *Dagans*, 2015 WL 4036211 at \*1; *State Farm Mutual Auto Ins. Co.*, 375 F.Supp.2d at 158. As the First Circuit succinctly put it: "[p]arties must take before the magistrate, not only their best shot but all of their shots." *Borden*, 836 F.2d at 6. Because Defendants make no showing that Judge Almond's order was clearly erroneous or contrary to law, the order should be affirmed and any further reconsideration of Matter 5 foreclosed.

## IV.   ARGUMENT

Defendants fail to point to any clear error committed by Judge Almond or any controlling law violated by his ruling.  Instead, Defendants merely rehash their prior unsuccessful motion to compel in the hopes of obtaining a different result.  They re-argue that they "need" the United States' privileged information without acknowledging that the standard for *this* motion requires them to demonstrate that Judge Almond committed "clear error" with his ruling.  The United States made a compelling showing to Judge Almond, including extensive citations to case law, that the information sought by Matter 5 is protected by Rule 26, is attorney work product, and is privileged under the investigatory file/process privilege.  The United States hereby incorporates into this filing its Opposition to Defendants' Motion to Compel (Dkt. 56) and the transcript of the hearing held on that motion (Exh. A).

In Defendant's Motion to Compel, Defendants' Reply, and at oral argument, Defendants failed to persuade Judge Almond that the United States' privileges should be cast aside to assist them in a fishing expedition in support of their improbable affirmative defenses.  Further, even if the Court were to consider Defendants' improperly submitted new evidence, the result is unchanged.  Nothing in Ms. Burrell's testimony adds anything of consequence to the arguments Defendants are rehashing in the instant motion.  As demonstrated below, Judge Almond's ruling was amply supported by the law and should be affirmed.

A.   Defendants Seek Information Protected From Disclosure by Rule 26

The information sought by Defendants is protected from disclosure by the Federal Rules of Civil Procedure.  *See* Fed. R. Civ. P. 26(b)(4)(C)-(D); Dkt. 56 at 12-13.  Rule 26(b)(4)(C) extends work product protection to any communications between a party and their testifying experts.  *See* Fed. R. Civ. P. 26 Advisory Committee's Note regarding 2010 Amendments.  This

protection includes all "attorney-expert communications regardless of the form of the communications, whether oral, written, electronic, or otherwise" and specifically includes "any 'preliminary' expert opinions." *Id*. Rule 26(b)(4)(D) shields the "facts known or opinions held by" non-testifying experts except in rare "exceptional circumstances under which it is impracticable for the party to obtain facts or opinions on the same subject by other means." *See* Fed. R. Civ. P. 26(b)(4)(D); *Plymovent Corp. v. Air Tech. Sols., Inc*., 243 F.R.D. 139, 143 (D.N.J. 2007).

Matter 5 seeks to obtain the privileged, preliminary statistical analyses conducted by experts retained by the United States. This would include identifying the United States' testifying and non-testifying experts, the facts they considered, the methodologies they utilized, the dates they communicated their findings to the United States, and the substantive results of their preliminary analyses conducted during the course of the United States' investigation. *See* Dkt. 60-1at 6, 12. Defendants make clear that they are not seeking the types of information usually disclosed in expert discovery but rather privileged communications and internal, preliminary analyses that will not be presented as part of the United States' case. *See* Dkt. 60-1 at p. 9 ("…State Defendants do not believe that they are seeking information that will be disclosed in expert discovery.").[1]

The information sought therefore falls squarely within the protection of Rule 26(b)(4)(C) & (D). Seeking to compel this information via a Rule 30(b)(6) deposition is an end-run around the protections of Rule 26, by trying to obtain information from counsel for the United States

---

[1] To the extent that Defendants are seeking information about the opinions of the United States' testifying experts that *will* be presented to support the United States' claims in this litigation and that *are* discoverable under Rule 26, they have received or will receive the United States' expert reports pursuant to the scheduling order in this litigation and can depose the United States' experts on any non-privileged matters. *See* Fed. R. Civ. P. 26(a)(2).

that it would not be entitled to obtain directly from the experts themselves. It also puts the United States' designee—a lay witness—to the perilous task of offering what amounts to expert testimony concerning the methodology and findings of the United States' experts.

There was no "clear error" in Judge Almond's determination that Defendants failed to overcome the protections of Rule 26. Despite several opportunities, Defendants have failed to show that this is the "rare" case where substantial need and undue hardship justifies casting aside the protections of Rule 26(b)(4)(C) and its protection of the United States' communications with testifying experts, let alone that the Court is *required* to do so because Judge Almond's ruling was contrary to the law. *See* Fed. R. Civ. P. 26 Advisory Committee's Note regarding 2010. Nor do Defendants cite a single piece of legal support for their contention that the instant situation satisfies the even higher standard of "exceptional circumstances" required by Rule 26(b)(4)(D) to inquire into the work of non-testifying experts. In fact, the opposite is true. Defendants are in possession of the data and information available to the United States (information and data that originated entirely from Defendants) and are capable of hiring their own experts to obtain "opinions on the same subject by other means." *See* Fed.R.Civ.P. 26(b)(4)(D)(ii). This in itself precludes a finding of exceptional circumstances.

B. The Information Sought by Defendants is Also Protected by the Attorney Work Product Privilege and Investigatory File/Process Privilege

Judge Almond did not commit clear error or act contrary to the law in finding that the information sought in Matter 5 is privileged and that Defendants did not meet the high bar necessary to justify casting the United States' privileges aside.

1. *The Information Sought by Defendants is Not Merely "Factual"*

Defendants baldly assert that the information they seek—namely, the "internal steps DOJ was taking with its investigation"—is merely "factual" and not privileged. *See* Dkt. 60-1 at 8.

12

Defendants propose to explore such "factual" matters as: "the types of analyses" run by the United States' experts; the dates on which "any analysis(es) indicated that there was disparate impact or any other issue with the process;" "the methods employed" and "the factual basis for any statistical calculations, . . . or the steps taken in establishing any statistical analysis;" and the "factual results of any such analysis(es)." *Id* at 6-7.  The essence of Defendants' inquiry is not "what information the DOJ had at given points in the investigation" (which Defendants already know), but rather "what the DOJ *did with the information* throughout the four-year investigation." *Id.* (emphasis added).

As fully briefed for Judge Almond, Defendants' continued assertion that such matters are merely "factual" and therefore not privileged highlights a fundamental misstatement of the law. *See* Dkt. 56 at 9-15.  The information sought is not merely "factual."  Defendants propose to inquire into how the United States' counsel—directly, or though their agents and experts,— "ha[ve] marshalled the facts learned during its investigation in support of [the government's] case." *See E.E.O.C. v. McCormick & Schmick's Seafood Restaurants, Inc.*, 2010 WL 2572809, *6 (D. Md. June 22, 2010); Dkt. 56 at 11-12.  This type of inquiry seeks counsel's mental impressions, illustrates the United States' investigative techniques, and reflects the government's pre-suit deliberations. *Id.* at 9-15.

### 2.   *The Information Sought by Defendants is Attorney Work Product*

The attorney work product privilege shields from discovery materials prepared (1) "by or for another party or by or for that other party's representative," (2) "in anticipation of litigation or for trial." *See* Dkt. 56 at 10 citing *United States v. Nobles*, 422 U.S. 225, 238 (1975); *Hickman v. Taylor*, 329 U.S. 495 (1947); Fed. R. Civ. P. 26(b)(3).  The doctrine protects "work that 'is reflected . . . in interviews, statements, memoranda, correspondence, briefs, mental impressions,

13

personal beliefs, and countless other tangible and intangible ways' as long as it was prepared in anticipation of litigation." *See* Dkt. 56 at 10 citing *Bryan Corp. v. Chemworth, Inc.*, 296 F.R.D. 31, 37 (D. Mass. 2013) (quoting *Hickman*, 329 U.S. at 511).

Defendants already know what information the United States analyzed during its investigation. It is information that came from Defendants, was reproduced to Defendants by the United States in the initial disclosures phase of this litigation, and was identified to Defendants with specificity in response to written discovery requests. What additional information Defendants seek through Matter 5 is counsel's "selection and compilation of relevant facts" that lies "at the heart of the work product doctrine." *See* Dkt. 56 at 11 citing *E.E.O.C. v. HBE Corp.*, 157 F.R.D. 465, 466-67 (E.D. Mo. 1994). As the Supreme Court has concisely stated: "At its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." *See id.* at 11 citing *Nobles*, 422 U.S. at 238. Defendants seek to intrude into that space.

### 3. *The Information Sought by Defendants is Also Part of the Government's Privileged Investigative Process*

The steps taken by DOJ attorneys and agents to analyze the lawfulness of RIDOC's selection procedures during the United States' investigation are also protected by the government's investigatory file/process privilege. *See* Dkt. 56 at 15. The investigatory privilege is necessary to protect law enforcement methods and techniques, and protects both civil and criminal investigative files from civil discovery. *See id.* citing *McPeek v. Ashcroft*, 202 F.R.D. 332, 336 (D.D.C. 2001). It applies both to investigatory files and testimony concerning their contents during depositions regarding government investigations. *See id.* citing *Arinder v. Lee*, 2000 WL 680343, *2 (E.D. La. May 23, 2000) (Roby, M.J.). Defendants' attempts to probe the "method of calculation by which the DOJ evaluated the RIDOC's employment and selection

14

procedures," *see* Dkt. 60-1 at 1 n.1, would lay bare to subjects of future investigations the means by which the United States conducts its Title VII pattern-or-practice investigations.  In the briefing before Judge Almond, Principal Deputy AAG Gupta formally asserted the investigatory privilege over the information sought in Matter 5 for precisely this reason.  *See* Dkt. 56-1 at 2-3.

### 4.    Defendants Have Not Made the Required Showing to Justify the Disclosure of the United States' Privileged Information

The United States does not dispute that the work product and investigatory file/process privileges it asserts are qualified.  *See* Dkt. 56 at 17.  However, Judge Almond did not commit clear error or act contrary to law in finding that Defendants have not met their burden of showing "substantial need" for the privileged information and "undue hardship" if the qualified privileges are allowed to stand.  *See id.* citing Fed. R. Civ. P. 26(b)(3); *Maine v. Norton*, 208 F. Supp. 2d 63, 66-67 (D. Me. 2002); *In re The City of New York*, 607 F.3d 923, 945 (2d Cir. 2010).  It is not enough for a party to generically claim they "have a right and a need to see the privileged documents that have been withheld"—indeed, were that the standard, no relevant document ever could be withheld on privilege grounds.  *See* Dkt. 56 at 17 citing *Maine*, 208 F. Supp. 2d at 66-67.

Further, the information Defendants are seeking − the marshalling and interpretation of facts to support the United States' case (whether undertaken by counsel or by an agent at the direction of counsel) − goes far beyond the mere "facts" Defendants allege to seek.  It is *opinion* work product of counsel for the United States, which is subject to the highest level of protection and cannot be overcome absent a showing of "extraordinary justification."  *See id.* at 12, 18 citing *Breon v. Coca-Cola Bottling Co. of New England*, 232 F.R.D. 49, 54 (D. Conn. 2005); *Upjohn Co. v. United States*, 449 U.S. 383, 399 (1981).

Even though Defendants' "need" is not the standard in the instant appeal, Defendants undercut any alleged "need" for the United States' privileged information in their own brief. Defendants argue, on one hand, that they need this information to determine when the United States "should have known" that a violation of Title VII had occurred. *See* Dkt. 60-1 at p 8. But, on the other hand, they argue that they already have sufficient evidence to show that the United States should have known in May of 2010. *See id*. at 5. And, as discussed below, the testimony of the United States' designee at the Rule 30(b)(6) deposition only further undermined Defendants' arguments of "substantial need" or "undue hardship" by illustrating the tenuous nature of Defendants' affirmative defenses.

    a.   *Defendants' Estoppel Defense Does Not Create a Substantial Need for the United States' Privileged Analyses*

To the extent estoppel is even viable against the federal government, there is a heightened standard that requires "extreme circumstances," and, at a minimum, a showing "that government agents have been <u>guilty of affirmative misconduct</u>." *See* Dkt. 56 at 19 citing *Dantran, Inc. v. U.S. Dep't of Labor*, 171 F.3d 58, 66-67 (1st Cir. 1999) (emphasis added). It is not enough for a party to rely on the erroneous advice of a government official. *See id.* citing *Schweiker v. Hansen,* 450 U.S. 785, 789 (1981) (per curium). Moreover, a party cannot claim detrimental reliance on the government when there is statutory guidance (such as the Uniform Guidelines on Employee Selection Procedures, 29 CFR § 1607) explaining their obligations under the law; thus, rendering such reliance unreasonable. *See id.* citing *Dantran,* 171 F.3d at 67.

At best, Defendants have demonstrated that the parties misunderstood each other's intentions at the outset of the United States' investigation and Defendants never sought to confirm their understanding of what was occurring during the subsequent four years. Even if true, this falls far short of affirmative misconduct on the part of the United States. Therefore,

16

Defendants' dubious estoppel defense does not create a "substantial need" to justify stripping the United States of its privileges. Judge Almond's refusal to compel the disclosure of this information was not "clearly erroneous."

> b. *Defendants' Laches Defense Does Not Create a Substantial Need for the United States' Privileged Analyses*

Nor did Defendants show that their laches defense creates a "substantial need" for disclosure of the United States' privileged information. To establish laches, Defendants have the burden of showing both (1) unreasonable delay in bringing suit, and (2) prejudice resulting from that unreasonable delay. *See* Dkt. 56 at 20 citing *Costello*, 365 U.S. at 282; *Murphy v. Timberlane Reg'l Sch. Dist.*, 22 F.3d 1186, 1189 (1st Cir. 1994). Evidence of prejudice originates with Defendants: prejudice can either be "evidence-based" (including such things as lost, stale, or degraded evidence) or "expectations-based" (that defendant took actions or suffered consequences that it would not have had the plaintiff filed suit more promptly). *See* Dkt. 56 at 22 citing *Vineberg v. Bissonnette*, 548 F.3d 50, 57 (1st Cir. 2008). This information is already in Defendants' hands.

At issue, then, is whether Judge Almond's ruling was clearly erroneous or contrary to law in finding that (1) Defendants did not have a substantial need for the information sought in Matter 5 to demonstrate "unreasonable delay," or (2) that being deprived of that information would not cause an undue hardship. Curiously, Defendants appear to seek evidence of the United States' knowledge not to show that the United States "unreasonably delayed" in *bringing suit*, but that the United States instead failed to timely inform Defendants that their selection process was unlawful. A laches defense, which pertains to a delay in bringing suit is at best an awkward fit with Defendants' allegations that, had the United States *timely informed* Defendants of "issues," Defendants could have altered their selection process accordingly, thereby limiting

17

potential damages.[2]  Defendants' alleged affirmative defense is in fact nothing more than an attempt to foist their burden of compliance with Title VII upon the United States, ignoring Defendants' duty to perform their own due diligence and ensure the lawfulness of their employment practices.

Regardless, if Defendants wish to establish that the United States had the requisite information to determine that Defendants' selection processes violated Title VII and caused an unreasonable delay, they can do so without inquiring into the DOJ's privileged communications and analyses.  Defendants claim that they have been "unable to gain any facts or information pertaining to when the DOJ knew or should have known that there was a statistical disparity, disparate impact, lack of validity, or any other issue" with their selection processes, "or what methods of calculation or analysis were employed."  *See* Dkt. 60-1 at 8.  But—as noted above—Defendants also contend that by May 2010 Defendants had provided sufficient information for the United States to perform a disparate impact analysis.  *See id*. at 5.

Defendants are as capable as the United States of evaluating Defendants' own information in order to determine the point at which the United States had adequate information to determine that Defendants' selection processes violated Title VII.  *See McCormick & Schmick's Seafood Restaurants, Inc.*, 2010 WL 2572809 at *6.  Based on this reasoning, the court in *McCormick* granted the EEOC's motion for a protective order barring a Rule 30(b)(6) deposition of the agency on work product privilege grounds, and noted that "[d]efendants have complete access to their own payroll, personnel, and applicant data for purposes of statistical analysis of their employee selection patterns by their own expert."  *Id.*  Defendants' counsel and

---

[2]    This case has been bifurcated into liability and relief phases.  *See* Dkt. No. 26. Defendants' laches defense appears to be solely aimed at limiting Defendants' damages in the relief phase.  Defendants have spent an extensive amount of time, including the Court's time, on an issue that is not even directly implicated in the current liability phase.

experts, being in possession of the entirety of the United States' correspondence with Defendants, are apprised of the dates upon which Defendants transmitted information to the United States.  Further inquiry into the "internal steps DOJ attorneys were taking with its investigation" simply is unnecessary – any incremental value to Defendants is far outweighed by the harm to the United States.  Given the interest of the United States in safeguarding its privileged information, the information already available, and the weakness of the affirmative defenses at issue, it cannot be said that Judge Almond was clearly erroneous in finding that no "substantial need" exists for Defendants to invade the United States' privileged communications with its experts and internal, preliminary analyses.

    C. <u>The Ruling Sought by Defendants Would Have Little Practical Effect on Their Ability to Obtain Information Responsive to Matter 5</u>

It must also be pointed out that Defendants have put before the Court only a narrow objection to Almond's ruling concerning Matter 5.  *See* Dkt. 60-1 at pp. 1, 9.  Their motion does not address the separate portion of the Magistrate Judge's order enjoining "questions regarding experts and their opinions that will be the subject of later disclosure pursuant to Rule 26(a)(2)(B) or are protected from disclosure under Rule 26(b)(4)(D)."  *See* Exh. B, Magistrate Judge Almond's Text Order, February 24, 2016.  As a result, even if this Court were to grant the relief sought by Defendants and order the United States to put forward a Rule 30(b)(6) witness concerning Matter 5, the ruling would have little practical effect.  Defendants seek, through Matter 5, to inquire into analyses performed by the United States' testifying and non-testifying experts.  However, any such questions would be prohibited under the portion of the Magistrate Judge's order enjoining such questions that remains unchallenged and in effect.  And any further objection by Defendants would, at this point, be untimely.  *See* Fed. R. Civ. P. 72(a) and L.R. 72.

19

## V.      CONCLUSION

For the foregoing reasons, the United States respectfully requests the Court affirm

Magistrate Judge Almond's order denying Defendants' motion to compel with regard to Matter 5

of Defendant's Notice of Rule 30(b)(6) Deposition of the United States.


Dated: March 25, 2016

PETER F. NERONHA                          VANITA GUPTA
United States Attorney                    Principal Deputy Assistant Attorney General
District of Rhode Island                  Civil Rights Division

                                          DELORA L. KENNEBREW
                                          Chief
                                          Employment Litigation Section

                              By:         */s Elizabeth Banaszak*
                                          CLARE GELLER
                                          (NY Reg. No. 4087037)
                                          ELIZABETH B. BANASZAK
                                          (IL Bar No. 6299035)
                                          DAVID N. REESE
                                          (AL Bar No. ASB-0887-I67R)
                                          KUNTI D. SALAZAR
                                          (CA Bar No. 279090)
                                          Trial Attorneys
                                          Employment Litigation Section
                                          Civil Rights Division
                                          United States Department of Justice
                                          950 Pennsylvania Avenue, NW, PHB
                                          Washington, DC  20530
                                          Telephone: (202) 353-1817
                                          Fax: (202) 514-1105

                                          *Counsel for Plaintiff United States of America*

20

## CERTIFICATE OF SERVICE

I hereby certify that on March 25, 2016, I filed the within Plaintiff United States' Response in Opposition to Defendant's Objection to Magistrate's Order Denying in Part Defendant's Motion to Compel 30(b)(6) Deposition Testimony using the CM/ECF system where it is available for viewing and downloading.  The CM/ECF system will send notification of such filing to the following:

> Neil F.X. Kelly (nkelly@riag.ri.gov)
> Rebecca Tedford Partington (rpartington@riag.ri.gov)
> Ariel Yaffee (ayaffee@riag.ri.gov)
> Edward Mullaney (emullaney@riag.ri.gov)
> Kathleen Kelly (kathleen.kelly@doc.ri.gov)
> Mariana E. Ormonde (mormonde@riag.ri.gov)


> /s  Elizabeth Banaszak
> Elizabeth Banaszak
> Senior Trial Attorney

21