# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

* * * * * * * * * * * * * * CIVIL ACTION
                              * NO. 14-78S
UNITED STATES OF AMERICA  *
                              *
VS.                           * FEBRUARY 23, 2016
                              *
STATE OF RHODE ISLAND       *
DEPARTMENT OF                 *
CORRECTIONS, ET AL          *
                              * PROVIDENCE, RI
* * * * * * * * * * * * * *


BEFORE THE HONORABLE LINCOLN D. ALMOND

MAGISTRATE JUDGE

(Motion to Compel 30(b)(6) Deposition Testimony)

(Telephonic Hearing)

**<u>APPEARANCES</u>:**

FOR THE GOVERNMENT:        DAVID N. REESE, ESQ.
                           CLARE GELLER, ESQ.
                           ELIZABETH B. BANASZAK, ESQ.
                           KUNTI D. SALAZAR, ESQ.
                           U.S. Department of Justice
                           950 Pennsylvania Avenue NW
                           Washington, DC  20530

FOR THE DEFENDANT:         ARIELE YAFFEE, ESQ.
                           NEIL F.X. KELLY, ESQ.
                           MARIANA E. ORMONDE, ESQ.
                           RI Department of Attorney
                           General
                           150 South Main Street
                           Providence, RI  02903

Court Reporter:            Denise P. Veitch, RPR
                           One Exchange Terrace
                           Providence, RI  02903

23 February 2016 -- 11:00 A.M.

THE COURT:  This is the United States of America versus the Rhode Island Department of Corrections and the State of Rhode Island, Civil Action 14-78S.  The matter is before the Court today for a telephonic on the record hearing regarding the State Defendants' motion to compel, Document Number 55.

Can the attorneys participating in this telephonic hearing identify themselves for the record, starting with the Plaintiff, United States.

MR. REESE:  Yes, your Honor.  Good morning. This is David Reese for the United States.  I'm joined by my co-counsel, Clare Geller, Elizabeth Banaszak, and Kunti Salazar.

THE COURT:  All right.  And for the Defendants today?

MS. YAFFEE:  Yes.  It's Ariele Yaffee, joined by Neil Kelly and Mariana Ormonde for the State.

THE COURT:  All right.  Who is going to argue for the State?

MS. YAFFEE:  Your Honor, Ariele Yaffee will.

THE COURT:  Okay.  I've reviewed the briefs. Can you maybe refresh me on the substance of the laches defense that the State is pursuing in this matter?

MS. YAFFEE:  Yes, your Honor.  Essentially, the

laches defense was recognized by Judge Smith in his decision, in his previous decision on the State's motion to dismiss, in holding that there was no statute of limitations applied to the Department of Justice in bringing this suit.

He did hold that the State could pursue a laches defense in equity, and that's the basis of the deposition that is pending before the Court.

THE COURT:  Yes.  So what is the defense? What's your argument?

MS. YAFFEE:  Essentially just that in 1993 the Department of Justice came to investigate the Rhode Island Department of Corrections and after a period of time whereby we, the Department, sought assurances from the Department of Justice to try and conciliate and resolve the case short of litigation.  Those assurances weren't put into writing, but the Department of Justice developed communications with the Rhode Island Attorney General, who was representing the Department of Corrections at that time.

There was a period of time whereby the Rhode Island Department of Corrections obtained the name of a consultant recommended by the Department of Justice, and after hiring that consultant and putting action into place to change the selection process for the

Department of Corrections, the Department of Justice effectively informed the Department of Corrections that they would not be going forward with their investigation and no suit would be filed.

After a period of around 12 years, the Department of Justice came back to Rhode Island in 2009 with this instant investigation, from 2009 to 2013, and at that point they represented to the Director of the Department of Corrections and others that they would be looking at the employment practices, that there would be a communication between the Department of Justice and the Department of Corrections, and that if they found an issue they would bring it up to the Department of Corrections and work it out.

And so that period of time of the investigation was four years, and the Department of Corrections handed over multiple documents, answered multiple questions from the Department of Justice, and at no point in time did the Department of Justice ever inform the Department of Corrections that there was any issue with the selection devices or the process at hand.

And as that investigation was pending, the Department of Corrections continued to hold subsequent classes and recruit, train, and hire more correctional officers.

THE COURT: So what is the relevance of the '93 to '96 investigation? Are you saying they should have alerted the State that there was some problem back then, or moved forward with litigation?

I'm not sure how that's relevant to the timeliness of the suit presently.

MS. YAFFEE: I think, your Honor, it goes both to the fact that in '96, after we actually hired the consultants that the DOJ recommended, and that they then subsequently told us that they weren't going to go forward with their suit and that they had completed their investigation at that time is evidence of the fact that the DOJ and the Rhode Island Department of Corrections was working in a cooperative manner. That goes more to the estoppel defense that the (inaudible) are pursuing.

THE COURT: Okay. So again I'm trying to understand. So because there was no suit filed back in '96, that that led the State to believe that its practices were in conformance with the law, its hiring practices?

MS. YAFFEE: I think it's more that -- I think it also goes to the laches in the sense that, you know, the Department of Justice knew that the Department of Corrections was changing its practice. It did change

its practice.

It also did not come back to the Department of Corrections until 2009.  So, you know, they were also reaching back to 2000 in this instant lawsuit; so they're seeking information that goes back to 2000, which is only a few years after the Department of Justice closed their investigation.

THE COURT:  Now, in Judge Smith's order from back in 2015 he says that the Plaintiff in this action has indicated that it's not seeking back pay prior to 2007.  So what relief are they seeking that goes all the way back to 2000?

MS. YAFFEE:  Your Honor, my understanding, and the Department of Justice can correct me if I'm wrong, but my understanding is that the back pay liability would not go past 2007; however, they have, on liability, would go all the way back to 2000.  So all the individuals that took and did not -- took the exams and did not proceed in the process would get a chunk of this, what they have called a pot of money that goes from 2007 to the present, but those individuals could go back as far as 2000.

THE COURT:  Okay.  All right.

Now, I've reviewed the 30(b)(6) deposition notice in question and some of the back and forth about

the various topics and the privileges asserted by Plaintiff.  I guess I'm a bit at a loss as to what it is the Defendants here want me to do.  There was a reference in one of the filings by the State that they're looking for me to set certain ground rules.

What is it that the State is asking me to do, and how can I do that just based on the general topic descriptions, as opposed to particularized questions and objections?

MS. YAFFEE:  Yes, your Honor.  The State is not opposed to allowing the deposition to go forward on the question by question basis, as suggested by the Department of Justice.

The issue is more that there are these broad assertions of blanket privileges that, you know, the State believes there's factual information contained under each of these topics that is relevant and pertinent to our defenses here and that to the extent that they are covered by a privilege or that the Department of Justice is claiming a privilege over, you know, we believe that they would meet the substantial need, and that's based on the two defenses of laches and estoppel and that, you know, just factual information as to what the Department of Justice knew and when they knew it; and those kinds of factual

pieces of information that may be contained in privileged documents are facts that the State needs to assert these defenses and effectively pursue them, particularly in the matters where no -- where the Department of Justice has designated no designee.

THE COURT: Which matters are those? What number?

MS. YAFFEE: I believe it's (inaudible).

THE COURT: Excuse me?

MS. YAFFEE: I'm sorry. I believe it's five and nine.

THE COURT: Five and nine. And 10 as well, it looks like.

All right. Anything else before I hear from the Plaintiff?

MS. YAFFEE: Yes. Your Honor, the last thing I would just add is that although it is the factual information we're seeking, if it is a substantial need that we need to meet, that we do meet it and that it's really impossible for us to obtain that information from any other source since, you know, the Department of Justice is the sole, they're in the sole possession of this information.

THE COURT: You say what they knew and when they knew it. Knew what? What kinds of things are you

looking for?  Whether they had made any internal finding that there was a disparate impact but never told you?  Is that the kind of thing you're looking for?

MS. YAFFEE:  That's for one example, yes, your Honor.

THE COURT:  Any other examples you can think of?

MS. YAFFEE:  Similarly with any issues of validity of the exams or that they had determined that, you know, that the impact was on specific groups, or that it no longer included women, or that the time between, the time it took between certain -- excuse me -- the time between receiving certain information and following up on that information.  I believe that all those go to both the laches and estoppel defenses.

THE COURT:  All right.  Let me hear from the Plaintiff now.

Thank you, Ms. Yaffee.

MR. REESE:  Thank you, your Honor.

I think it's apparent from the United States' filing in this matter how seriously we take the inquiries that are proposed by Defendants.

The information that Defendants are seeking is delving into the core of our privileged information.  It delves into our internal work product.  It also

delves into material that we emphatically contend are protected by the deliberative process privilege and also are protected by the investigative file privilege.

The ramifications from this decision will not just impact the instant case, but will also bear on our entire ability to enforce Title VII, and it's what the Department and specifically this office is charged with doing.

The work product privilege, which Defendants appear to --

THE COURT:  Is this issue any different because it's in the context of a disparate impact investigation?  This isn't a situation where individuals have made complaints about discriminatory treatment or maybe have given confidential statements to your entity?

MR. REESE:  Your Honor, this is --

THE COURT:  I guess I'm trying to understand what's the harm of -- you believe that the State's hiring practices here are unlawful, that it's, I guess, unintentional discrimination, and that there are certain damages.

What's the harm to say, well, here's what we found and here's what our conclusions were over a period of time?

MR. REESE:  What's the harm in the United States doing that in the course of the litigation, your Honor -- I mean, in the course of the investigation?

THE COURT:  You're positing to me that if I rule for the State here that the EEOC is going to come to a crashing halt and not be able to enforce Title VII. That's what you're suggesting to me, and I just find that to be a little extreme.

So, explain to me what about these files and this information is so sensitive that it can't be disclosed to the State so they can attempt to use it for their affirmative defenses.

MR. REESE:  Absolutely, your Honor.  The first concern is that the inquiry the Defendants are talking about would reveal the methods and processes by which we conduct our investigations into disparate impact discrimination under Title VII.  Our concern is that if these methods and processes become widely known, that employers will gain attention to this sort of thing, will rely upon this information to fly under the radar in order to manipulate their hiring practices and manipulate their systems in the way that it won't attract the notice of the Department of Justice and consequently will be able to avoid being held to account for their unlawful practices.

Our other concern, and we think this is a significant concern, is that we've investigated a large number of employers and sometimes we found wrongdoing and other times we have not.

Defendants, particularly in their matter nine, are proposing a fishing expedition into 21 years of enforcement activity. What they're looking for encompasses our entire Title VII enforcement program. And I represent to you, your Honor, that in the course of those 21 years we've concluded our investigations and found no wrongdoing on the part of a number of employers.

If Defendants are permitted to make this inquiry, these employers who did nothing wrong and who provided this information to us in confidence will be exposed to unfair scrutiny. We think that prejudices them.

That may influence the willingness of other employers in the future to cooperate and provide us with information if they know that it may be subsequently disclosed in a lawsuit such as this one.

THE COURT: All right. So other than matters five, nine, and 10, you're willing to present a deponent to testify on behalf of the Plaintiff, but you believe some of the areas of inquiry are potentially

privileged?  Is that what I'm led to believe?

MR. REESE:  Yes, your Honor.  And actually the United States would contend that the matters as laid out by Defendants in their notice of 30(b)(6) deposition implicate, obviously implicate privileges, and I think Defendants have acknowledged just in their statement to you this morning that at minimum this may inquire into privileged materials.  We think it almost certainly -- we think it certainly will.  There's no question.

With respect to the work product privilege it most obviously, what they're looking into by their statements that they want to know what the DOJ did with the information, what the DOJ was looking for in that information, the fact results of any analyses conducted by the DOJ, or when the DOJ knew that there was any sort of issue of RIDOC's processes -- I'm just referring to Page 6 of their reply brief -- all of these matters refer to the internal work product of the United States, the mental impressions of these legal theories and specifically, to use the phrase of the courts, a lot of courts have used in reaching this very issue, the marshalling of the facts as done by counsel for the United States, and so that's immediately implicated.

And Defendants appear, through their filings and their papers, they make clear that it is that kind of information that they seek to inquire into and possibly exploit in the service of their affirmative defenses.

The information they're looking for also goes obviously to the deliberative process privilege.  They seek to inquire as to our internal deliberations, the recommendations that we have made to one another, the internal conversations between counsel for the United States, as well as any conversation we might have had with our agents or litigation consultants or any consultants we retained for our investigation.

All of those are important to ensure and are important to be protected to ensure that an agency like ours can have a candid, straightforward decision-making process, and if those conversations are potentially exploitable, made available in discovery, then that obviously is going to have a deleterious impact on our ability to speak freely as we conduct our Title VII enforcement activities.

And finally, as we've already discussed, your Honor, we think that their inquiries obviously inquire into how we conduct our investigations, the processes and techniques that we use and the way we analyze the data that we receive from employers, and so it thereby

implicates the law enforcement investigative process privilege.

THE COURT:  All right.  Anything further?

MR. REESE:  Nothing further from the United States, your Honor.

THE COURT:  Anything the defense wants to reply to briefly?

MS. YAFFEE:  Yes, just briefly, your Honor.

We're not looking to reveal their mental process or their, you know, internal thoughts on their investigation.  But the fact of the matter is they were conducting an investigation, which the Department of Corrections fully cooperated with and believed that they would fix their process by working with the Department of Justice; and the facts that attend to the investigation and the time it look to uncover certain information or facts that were learned in their investigation are all relevant and pertinent to the defenses that the State is now putting forward.  And, you know, it's similar to an investigation, it's similar to a police investigation and the investigation is closed and, as your Honor mentioned, there's really no harm in exposing any confidential sources.

And the fact that the Department of Justice doesn't want the world to know what their investigative

process is, I understand that argument, but at the same time perhaps if employers had a better understanding of what they were looking for, they could make better systems and use better processes without having to be on the hook for a substantial amount of damages.

That's all I have to add, your Honor.

THE COURT:  Again, I may be repeating the question and you may have already answered it, but I just, I want to understand, because you're seeking this information to pursue these defenses of laches and estoppel.

What is it that you're arguing that the State should have done, I mean, the United States should have done here?  That they should have moved forward sooner with the investigation, moved forward sooner with the lawsuit?  I'm not clear as to exactly what it is you intend to argue, or do you not know --

MS. YAFFEE:  Yes, your Honor, it's the fact that there were representations which the Department of Justice had made, representations that they would raise any issues that arose with their selection process with the Department of Corrections in a way that the Department of Corrections would be able to remedy any issues and make a better process without facing litigation, and that that information was never

provided and to the Department of Corrections own detriment as they continued to run more classes, needing more correctional officers.

You know, perhaps if they had learned that there were any issues at an earlier point in time then, you know, we wouldn't be in this situation at all and they could have fixed the process if there is an issue. Even in the sense if they don't think there is an issue, they could have made it better.

MR. REESE:  Your Honor, maybe you're not --

THE COURT:  Are you saying between 2000 and 2009, or 2009 and when suit was filed in 2014?

MS. YAFFEE:  It would be the 2009 to 2013.

THE COURT:  All right.  I'm going to take the matter under advisement.  The deposition is going to go forward.  I'll look at the papers to see what extent that I can provide any insight or guidance that might assist with respect to that deposition.

I'm not sure that I'm going to be able to, in this short time frame, give you crystal clear ground rules that are going to answer all of your questions and resolve all of these issues.

With respect to any assertions of either attorney-client privilege or work product privilege, I'm not going to make any rulings on that.

If a question is asked and counsel for the Plaintiff in good faith believes that the answer would elicit information covered by the work product or attorney-client privilege, raise an objection and instruct the deponent not to answer, and if the State wishes to pursue it we can deal with that in a subsequent motion.

I'm not going to make a blanket ruling on the attorney-client privilege or work product privilege in a vacuum. I just don't feel that I'm in a position to do that, given the importance of that privilege.

As to the other privileges asserted, I'll look through the topics and the responses, the arguments on both sides, and see to what extent I might be able to provide some guidance to make the deposition more efficient.

It's scheduled for the 3rd; is that correct?

MS. YAFFEE:  Yes, your Honor.

THE COURT:  All right.

Thank you for participating today.  Court will be in recess.

MS. YAFFEE:  Thank you.

MR. REESE:  Thank you, your Honor.

(Adjourned)

C E R T I F I C A T I O N


        I, Denise P. Veitch, RPR, do hereby certify that the foregoing pages are a true and accurate transcription of my stenographic notes of the audio recording in the above-entitled case.


                        /s/ Denise P. Veitch_
                        Denise P. Veitch, RPR


                        March 10, 2016
                             Date